MATTER OF COTE

In Exclusion Proceedings

A-20873404

*Decided by Board March 6, 1980*

A Canadian citizen truck driver of a United States firm who seeks to deliver automobiles manufactured in Canada into the United States and to pick up automobiles in the United States and transport them back to Canada is admissible to the United States as a visitor for business under section 101(a)(15)(B) of the Act as the transportation function he performs is a necessary incident to international trade and the unloading of automobiles in the United States by the applicant is merely incidental to his primary purpose of transporting them into the country.

EXCLUDABLE:
 Order: Act of 1952—Sec. 212(a)(20) [8 U.S.C. 1182(a)(20)]—Immigrant—no visa

ON BEHALF OF APPLICANT:
 Sam Bernsen, Esquire
 1000—16th Street, N.W.
 Washington, D.C. 20036

ON BEHALF OF SERVICE:
 George Indelicato
 Trial Attorney

BY: Milhollan, Chairman; Maniatis, Appleman, Maguire, and Farb, Board Members

In a decision dated September 15, 1978, an immigration judge admitted the applicant to the United States as a nonimmigrant visitor for business under section 101(a)(15)(B) of the Immigration and Nationality Act, 8 U.S.C. 1101(a)(15)(B). The Immigration and Naturalization Service has appealed. The appeal will be dismissed.

The applicant is a native and citizen of Canada and resides in Canada. At the time of the hearing, he was 30 years old. He is employed by Anchor Motor Freight Inc., as a truck driver.

Anchor Motor Freight, Inc. (Anchor Freight), is a Delaware corporation and a wholly-owned subsidiary of Leaseway Transportation, Inc., of the United States. The parent corporation controls Leaseway Limited of Canada, which in turn is the parent corporation of Charlton Transport Limited, Quebec (Charlton). Licenses for transportation of General Motors vehicles in the United States are owned by Anchor Freight; the licenses for transportation of General Motors vehicles in Canada are owned by Charlton. A lease agreement exists

between Anchor Freight and Charlton for use of each other's facilities, including transportation licenses, trucks owned by Charlton, trailers owned by Anchor Freight, and the truck drivers employed exclusively by Anchor Freight.

Anchor Freight employs 132 drivers. Approximately 90 percent of them are United States citizens or permanent residents. The applicant is one of 12 to 15 Canadian citizen drivers employed pursuant to the labor-management agreement with the International Brotherhood of Teamsters which requires the employment of Canadian as well as the United States drivers.[1] Canadian drivers are assigned only shipments destined to cross the border between the United States and Canada. They are not assigned to transport automobiles from one point in the United States to another.

The applicant's employment is as follows. He travels from his home in Canada to Anchor Freight's truck terminal in Champlain, New York, where he obtains a tractor-trailer. From the terminal he proceeds to St. Therese, Quebec, Canada, where he loads the trailer with new General Motors automobiles. The applicant returns to Champlain, New York, receives his manifest, and proceeds to deliver the automobiles to various dealerships in New York and New Jersey. Delivery requires 3 to 5 days, after which the applicant either returns to the terminal at Champlain and repeats the route just described or goes to Tarrytown, New York, to pick up a load of automobiles and transport them to St. Therese, Canada.

The applicant may work up to 70 hours per week. Of that time, 4 to 8 hours are expended in Canada, and the remainder, extending over 3 to 5 days, is expended in the United States. For this work, the applicant receives a contract price for hauling the load and mileage for pulling the trailer empty. He is paid by Anchor Freight in Canadian funds by a chech drawn on a Canadian bank.

On appeal, the Service contends that the applicant is not admissible under section 101(a)(15)(B) of the Act because he is seeking to enter the United States to perform local employment for hire, and not as a visitor for business. The Service contends that the applicant's employment is manual labor, not intercourse of a commercial character, and that the respondent must have an immigrant visa in order to pursue it. As evidence that the applicant is engaged in local employment for hire, the Service points to the following factors. The applicant works for a United States corporation. He drives to the United States to begin work. His truck is maintained in the United States, as are his employment records. Most of the work that he does is in the United States, and he spends most of his work week in the United States.

---

[1] The Union has voiced no opposition to the applicant's admission.

In response to the Service's contentions, the applicant submits that his activities have been construed in previous administrative decisions to be "business" within the meaning of 101(a)(15)(B) of the Act. He contends that it has been the Immigration and Naturalization Service's policy to admit truck drivers to the United States as visitors for business (B-1) for years,[2] and that the Service should be estopped from enforcing a change in that policy against the applicant because the Service advised Anchor Freight that its drivers would be admissible to the United States as nonimmigrant visitors for business (B-1) and that Anchor Freight has relied on that advice. He also contends that the change in policy is invalid because it was not accomplished in accordance with the Administrative Procedure Act.[3]

Section 101(a)(15)(B) of the Act defines a nonimmigrant visitor for business by implication, as:

[A]n alien (other than one coming for the purpose of study or of performing skilled or unskilled labor or as a representative of foreign press, radio, film, or other foreign information media coming to engage in such vocation) having a residence in a foreign country which he has no intention of abandoning and who is visiting the United States temporarily for business...

The term "business" as used in section 101(a)(15)(B) has been held not to include ordinary labor for hire, but to include only intercourse of a commercial character. See Karnuth v. U.S. ex rel Albro, 279 U.S. 231 (1929); Matter of Hira, 11 I&N Dec. 824 (BIA 1965, 1966; A.G. 1966); Matter of P—, 8 I&N Dec. 206 (BIA 1958). However, an alien need not be considered a "businessman" to qualify as a business visitor, if the function he performs is a necessary incident to international trade or commerce. Matter of Hira, supra; See Matter of W—, 6 I&N Dec. 832 (BIA 1955); Matter of R—, 3 I&N Dec. 750 (BIA 1949).

We find that the applicant is engaged in "business" within the meaning of section 101(a)(15)(B) of the Act because the function he performs is a necessary incident to international trade. Although the applicant is an employee, as opposed to an independent businessman, he is actively engaged in the transportation of automobiles across the international boundary. That transportation is an essential link in international trade. Unloading of the automobiles by the applicant is a

---

[2] The applicant submitted copies of prior Operations Instructions 214(b), which reflect that truck, bus, and van drivers and helpers engaged solely in international transport and incidental loading and unloading at terminal points were admissible to the United States as nonimmigrant visitors for business (B-1) at least between June 3, 1953, and sometime after December 1, 1956. Counsel for the applicant contends that the provision was deleted from the Operations Instructions not because of a change of policy, but in a move to reduce the volume of the Operations Instructions. The Service has not disputed the content of the provision or counsel's explanation for its deletions.

[3] As our decision is favorable to the applicant, we will not address his contentions individually.

necessary function of delivery and is merely incidental to the primary purpose of transporting them into the United States. *See Matter of R—, supra.* Although the applicant's trips are frequent—almost continuous—each is temporary for a business purpose, and after each, the applicant intends to return to Canada.

Accordingly, the applicant is admissible as a nonimmigrant visitor for business.

**ORDER:** The appeal is dismissed.