

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-22-1999

# Mwongera v. INS

Precedential or Non-Precedential:

Docket 98-6436

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

## Recommended Citation

"Mwongera v. INS" (1999). *1999 Decisions.* Paper 213.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/213

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed July 22, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 98-6436

DAVID KINYUA MWONGERA,
      Petitioner

v.

IMMIGRATION & NATURALIZATION SERVICE,
      Respondent

On Review of a Decision of the
Board of Immigration Appeals
(I.N.S. No. A73 514 152)

Submitted Under Third Circuit LAR 34.1(a)
June 8, 1999

Before: SLOVITER and MANSMANN Circuit Judges
and O'NEILL,* District Judge

(Filed July 22, 1999)

Steven A. Morley
Bagia & Morley
Philadelphia, PA 19106

 Attorney for Petitioner

_____

* Hon. Thomas N. O'Neill, Jr., United States District Judge for the
Eastern District of Pennsylvania, sitting by designation.

David W. Ogden
 Acting Assistant Attorney General
Joan E. Smiley
 Senior Litigation Counsel
Steven J. Kim
 Attorney
Karen F. Torstenson
 Attorney
Michael P. Lindemann
 Attorney
Alison M. Igoe
 Attorney
Office of Immigration Litigation
Civil Division
Department of Justice
Washington, D.C. 20044

 Attorneys for Respondent

OPINION OF THE COURT

SLOVITER, Circuit Judge.

I.

Introduction

David Kinyua Mwongera petitions for review of the Board of Immigration Appeals' ("BIA") decision ordering him excluded from the United States on the grounds that he was not in possession of a valid immigrant visa and had procured a visa by fraud. For the reasons set forth hereafter, we will deny the petition for review.

II.

Facts and Procedural History

Mwongera is a native and citizen of Kenya. He is the vice-president and sales manager for a family business called

2

One Way Agencies, which exports Kenyan crafts for sale in the United States and other countries. R. at 151–53. On August 1, 1993, Mwongera entered the United States for the first time on a temporary business visitor visa, referred to by the Immigration and Naturalization Service ("INS") as a "B–1" visa. See 8 C.F.R. S 214.2(a)(10). Mwongera obtained the B–1 visa on the basis of his representation to the consulate in Kenya that he was coming to the United States "to promote and market the African goods" that his company sold. R. at 157.

Although this visa was valid only through November 20, 1993, Mwongera secured an extension until February 20, 1994. R. at 333–39. On February 23, 1994, three days after the visa expired, Mwongera left the United States and returned to Kenya. R. at 171. At his hearing before the Immigration Judge, Mwongera testified that during this first visit (of nearly six months' duration) he only took one or two orders but that he also made some cash sales and used the proceeds to pay his hotel and phone bills. R. at 167–68.

Mwongera returned to the United States on March 27, 1994, using the same visa. He requested, and was granted, a six-month stay. He successfully requested a five-month extension of that visa from September 27, 1994 to February 12, 1995. R. at 344. Mwongera testified that he returned to this country on that second trip "[b]ecause I had left merchandise here and I had not accomplished what I came for in 1993 so I still wanted to make sure that I achieved my goal, looking for customers." R. at 172. During this visit, Mwongera incorporated his business in Pennsylvania, obtained a driver's license and social security card, purchased a van for company use, opened bank accounts, and made arrangements to ensure that customers could pay for goods using credit cards. R. at 175–78. He testified that he began selling more goods directly to customers, as opposed to taking orders, and that he would receive more goods from his sister in Nairobi when his stocks began to dwindle. R. at 184. Mwongera left the United States for Lisbon on approximately February 19, 1995 and returned to Kenya thereafter. R. at 298.

After returning to Kenya, Mwongera applied for a renewal of his B–1 visa in March 1995, requesting a stay offive

3

months. He stated on the application that the purpose of his visit was: "Business promotion and attend trade shows." R. at 318. In answer to the question "Have you ever been in the U.S.A.?," Mwongera responded, "yes" and stated that he had been in the United States for "six months in 1993 and six months in 1994." R. at 321. In fact, he had been in the country for five months in 1993 and for a total of eleven months in 1994. Mwongera failed to note his six-week stay in 1995. In response to the application's request that the applicant list the countries where the applicant lived for more than six months during the last five years, Mwongera listed only Kenya. R. at 320.

The renewal was granted on March 20, 1995, and Mwongera arrived in the United States for the third time on March 31, 1995. R. at 316, 318. He stayed in this country until July 5, 1995, at which point he traveled to Lisbon. On attempting to reenter the United States on July 23, 1995, Mwongera was detained by INS officers who questioned him about his intentions and the scope of his business dealings in the United States. Mwongera submitted a thirteen-page handwritten statement. R. at 305-17. The INS then commenced exclusion proceedings.

Following a hearing on October 8, 1996, the Immigration Judge ("IJ") concluded that because Mwongera (1) did not qualify as a temporary visitor for business, and thus did not possess a valid visa and (2) made misrepresentations on the March 1995 visa application that amounted to fraud or willful misrepresentation, he was excludable under INA S 212(a)(7)(A)(i)(I), 8 U.S.C. S 1182(a)(7)(A)(i)(I) (immigrant not in possession of a valid visa) and INA S 212(a)(6)(C)(i), 8 U.S.C. S 1182(a)(6)(C)(i)(visa procured by fraud or misrepresentation).

Mwongera appealed the IJ's ruling to the BIA, arguing that he engaged in the proper use of a B-1 visa and that the INS failed to establish that he had an intent to defraud. The BIA, in a decision dated October 22, 1998, rejected both arguments and affirmed the IJ's order of exclusion.

With respect to the issue of the B-1 visa, the BIA found that Mwongera's business had developed into one in which he no longer took orders to be filled in Kenya, but rather

4

sold directly to consumers in the United States. The BIA also found that Mwongera's plans were vague and open-ended with respect to his contemplated stay in the country, and that he had spent twenty of the previous twenty-four months in the United States. Accordingly, the BIA ruled that Mwongera's B-1 visa was not appropriate for his activities because Mwongera was not contemplating a temporary stay and because his business had developed such that his commercial activities had become employment for which he was not authorized. R. at 5-7.

Turning to the fraud issue, the BIA found that Mwongera had significantly understated his time in the United States, noting that the IJ took testimony from INS deportation officer Linda Hoechst, who testified that if she had been presented with accurate representations of Mwongera's prior time in the United States, she would not have automatically granted the request but would have pursued a line of inquiry about Mwongera's activities. R. at 279-81. On the basis of this evidence, the BIA ruled that Mwongera had in fact engaged in willful misrepresentation of material facts on his visa application. R. at 8.

Mwongera timely sought review. We have jurisdiction over this petition for review under 8 U.S.C. S 1105a(a), as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009 (Sept. 30, 1996). Under the regime created by IIRIRA, Mwongera's case falls under the "transitional rules" for judicial review, set forth at IIRIRAS 309(c)(4)(A), which direct that judicial review of exclusion orders is to be conducted pursuant to 8 U.S.C. S 1105a(a) and (c).

Our review of the BIA's findings of fact is limited to whether they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992). We will reverse the BIA's determinations of fact only if the evidence "was so compelling that no reasonable factfinder could fail to find" for the petitioner. Id. at 483-84. To the extent that the BIA's decision rests on an interpretation of the agency's governing statute on a matter as to which Congress has not expressed a clear intent, we defer to the agency's reasonable interpretation of the statutory

5

language. See INS v. Aguirre–Aguirre, 119 S.Ct. 1439, 1445 (1999).

III.

Discussion

Mwongera argues first that the BIA erred in finding that he was not admissible as a visitor for business purposes. Stating that "[t]he INS regulations regarding proper use of a B-1 visa [are] subject to varying interpretations," Pet. Br. at 12, Mwongera contends that his activities in the United States were permissible temporary business activities rather than impermissible local employment under the INA.

The Immigration and Nationality Act ("INA"), describes a non-immigrant business visitor as "an alien (other than one coming for the purpose of study or of performing skilled or unskilled labor . . . ) having a residence in a foreign country which he has no intention of abandoning and who is visiting the United States temporarily for business . . . ." INA S 101(a)(15)(B), 8 U.S.C. S 1101(a)(15)(B). The agency has promulgated regulations that elaborate on the statute. The pertinent regulation states:

> An alien is classifiable as a nonimmigrant visitor for business (B-1) or pleasure (B-2) if the consular officer is satisfied that the alien qualifies under the provisions of INA 101(a)(15)(B), and that:
>
> (1) The alien intends to leave the United States at the end of the temporary stay (consular officers are authorized, if departure of the alien as required by law does not seem fully assured, to require the posting of a bond with the Attorney General in a sufficient sum to ensure that at the end of the temporary visit, or upon failure to maintain temporary visitor status, or any status subsequently acquired under INA 248, the alien will depart from the United States);
>
> (2) The alien has permission to enter a foreign country at the end of the temporary stay; and

6

(3) Adequate financial arrangements have been made to enable the alien to carry out the purpose of the visit to and departure from the United States.

22 C.F.R. S41.31(a). The regulation goes on to define "business" as used in the statute as "refer[ring] to conventions, conferences, consultations and other legitimate activities of a commercial or professional nature. It does not include local employment or labor for hire. . . . . An alien seeking to enter as a nonimmigrant for employment or labor pursuant to a contract or other prearrangement is required to qualify under the provisions of S 41.53."

The BIA concluded that Mwongera's activities exceeded the scope allowed by a B-1 visa for two reasons: (1) because Mwongera's intended visit could not be considered "temporary" and (2) because Mwongera's activities crossed the line between permissible "business" and impermissible employment. We find that the BIA's findings have substantial support in the record and its conclusions of law are based upon a reasonable interpretation of the statute.

In determining what constitutes a "temporary" visit within the intendment of INA S 101(a)(15)(B), the BIA has stated that the term "certainly does not contemplate a potentially limitless visit to the United States." Matter of Lawrence, 15 I.&N. 418, 420 (BIA 1975). While acknowledging that "[t]here are no inflexible rules to be applied when deciding what is `temporary' within the context of a business visit," the Board noted that "we have never held that an alien could qualify as a business visitor if his business activities almost exclusively involved the full-time management of a United States enterprise." Id. at 419-20.

In this case, the Board found Mwongera's activities to be sufficiently analogous to those of the aliens in Lawrence that Mwongera's business activities could not be considered "temporary." In Lawrence, two Canadian citizens sought entry on a B-1 visa. They were regularly engaged, through a business they incorporated in the United States, in the buying and selling of improved real estate. The BIA rejected the contention of one of the aliens that he was a temporary

business visitor, stating: "The . . . respondent did not seek to enter the United States for a reasonably short and relatively definite period of time. Nor was he coming here with any limited goal in mind." Id. at 420. The Board went on to state, "It appears that the . . . respondent might easily decide to remain here permanently to supervise the day-to-day operations of [the company], even though he may choose to return to Canada on a regular basis." Id.

The BIA found that Mwongera, like the alien in Lawrence, "had no plans for the foreseeable future, but intend[ed] to continue coming to the United States." R. at 5. This is supported by various statements in Mwongera's testimony, including, for example, his statement that if "granted authorization, I'll be coming here as I was doing before, just coming in and out." R. at 236. Furthermore, citing Mwongera's testimony that he could not hire a United States citizen to do the work that he was performing, the BIA also found that "absent his continued presence his company could not continue to do business in the United States." R. at 6. Accordingly, the Board concluded that, like the aliens in Lawrence, Mwongera had "set no definite goals and made no plans to accomplish those goals," and that his admission to the country could not be regarded as temporary. We find ample support in the record for the Board's findings, and therefore reject Mwongera's contention that the Board failed adequately to consider the record as a whole.

The BIA's second ground for holding that a B-1 visa was not appropriate in this case was its conclusion that Mwongera's activities were not "business" activities as that term is used in the statute. The BIA has repeatedly ruled that if the function performed by the visitor "is a necessary incident to international trade or commerce" the visitor's commercial activities are within the proper scope of a B-1 visa. See, e.g., Matter of Duckett, 19 I.&N. 493, 497 (BIA 1987); Matter of Camilleri, 17 I. & N. Dec. 441, 444 (BIA 1980); Matter of Cote, 17 I.&N. Dec. 336, 338 (BIA 1980); Matter of Neill, 15 I.&N. 331, 333 (BIA 1975). The BIA has found such a function in cases involving truck drivers who deliver goods from Canada for delivery to the United States, see Camilleri, 171 I.&N. at 444; Cote, 17 I.&N. at 338, and

8

a railroad clerk employed by a Canadian railroad who entered the country on a daily basis for a portion of his shift in order to clear his employer's railroad cars for transport from the United States to Canada, see Duckett, 19 I.&N. at 493. Conversely, the BIA has found that an alien engineer's activities were not incident to international trade when his repeated, short visits to the United States were for the purpose of "extending his professional engineering practice to the United States." Neill, 15 I.&N. at 334.

In this case, the Board found that, like the alien in Neill, "the majority of [Mwongera's] time spent in the United States is wholly central to the continued efficacy of his company's extension into the United States market." R. at 6. We find substantial evidence in the record, in the form of Mwongera's own testimony, to support this conclusion. Furthermore, the Board's ruling is in line with its prior precedents. Mwongera was not simply delivering goods internationally, as was the case in Camilleri and Cote. Rather, by his own testimony he made it clear that he was extending a retail sales business that was incorporated in the United States. This activity places him much closer to the engineer in Neill, who also sought to penetrate the United States market. Accordingly, the Board did not err in finding that Mwongera was "employed" without authorization.

Mwongera places much emphasis on the idea that the line between permissible business activities and impermissible employment is a "murky" one. Pet. Br. at 16. The argument that there is a lack of clarity in the definition of "business" under the INA, however, actually proves far too much. Where, as here, Congress has not expressed"an intention on the precise question," Chevron U.S.A. v. Natural Resources Defense Council, 467 U.S. 837, 843 & n.9 (1984), of what constitutes business activities appropriate for a B-1 visa holder, we are obliged to defer to the agency's interpretation of its governing statute unless it is unreasonable. Id. In determining that Mwongera's activities crossed the line that divides activities that are a "necessary incident to international trade or commerce" on the one hand, and those that involve "local employment" on

9

the other, the BIA has engaged in a process of case-by-case interpretation of the statute. As the Supreme Court stated in INS v. Cardoza-Fonseca, 480 U.S. 421, 448-49 (1987), and stressed again in its most recent immigration decision, Aguirre-Aguirre, 119 S.Ct. at 1445, the BIA is accorded Chevron deference when it interprets ambiguous statutory provisions "through a process of case-by-case adjudication." There is no ground on which to hold unreasonable the BIA's conclusion that one who repeatedly enters the country to engage in the day-to-day operation of a United States entity that sells goods within the United States is not a temporary business visitor under the INA.

Accordingly, we reject Mwongera's challenge to the BIA's ruling on the validity of his B-1 visa. Although this ground fully supports Mwongera's exclusion from the United States, we must address the fraud or willful misrepresentation issue, as a finding of excludability on this ground will add a further disability by barring Mwongera permanently from the United States unless he obtains a waiver. See Matter of Shirdel, 19 I. & N. Dec. 33, 34 (BIA 1984).

Mwongera does not argue that in filling out his visa application he accurately represented his prior stays in the United States. Rather, he urges that he did not have an intent to deceive and that his misstatements were not material. We address these contentions in turn.

First, we reject Mwongera's contention that the INS is required to show an intent to deceive in order to satisfy the statute. To the contrary, the INS must show that the alien obtained a visa by fraud (with its concomitant intent requirement) or by "willfully misrepresenting a material fact." INA S 212(a)(6)(C)(i); 8 U.S.C.S 1182(a)(6)(C)(i). "The element of willfulness is satisfied by a finding that the misrepresentation was deliberate and voluntary." Witter v. I.N.S., 113 F.3d 549, 554 (5th Cir. 1997). The INS does not need to show intent to deceive; rather, knowledge of the falsity of the representation will suffice. See Id.; Forbes v. INS, 48 F.3d 439, 442 (9th Cir. 1995); Espinoza-Espinoza v. INS, 554 F.2d 921, 925 (9th Cir. 1977).

In concluding that Mwongera had made a willful misrepresentation on his visa application, the BIA found

10

that Mwongera significantly understated his prior stay in the United States by stating that he had been in the country for six months in 1994 when he had in fact been in the country for a total of eleven months from March of 1994 to February of 1995. R. at 7. The BIA found Mwongera's explanations for the discrepancy to be "contradictory, self-serving, and unconvincing." R. at 8.

We find the record consistent with the BIA's findings. Mwongera gave three distinct and not-entirely consistent explanations for misstating his length of stay: First, he stated that he "did not know that it mattered and[that he] should be precise." R. at 226. Second, he offered that he "thought what mattered was the original entry[and that] the extension doesn't matter." R. at 228. Third, when Mwongera was asked why he failed to note his eleven-month stay in the United States in response to the visa application's query regarding countries where he had lived for more than six months during the past five years, he answered that he "did not understand what living meant." R. at 231. Accordingly, we conclude that substantial evidence supports the BIA's findings and that Mwongera has not provided evidence so compelling that a reasonable fact finder would be compelled to find in his favor on the question of the willfulness of the misrepresentation.

Next, Mwongera urges that his statement regarding his prior stay in the country was immaterial. We disagree. A statement is material

> if either (1) the alien is excludable on the true facts, or (2) the misrepresentation tends to shut off a line of inquiry which is relevant to the alien's eligibility and which might well have resulted in a proper determination that he be excluded.

Matter of Kai Hing Hui, 15 I. & N. Dec. 288, 289 (BIA 1975)(quoting the Attorney General's opinion in Matter of S-- and B-- C--, 9 I. & N. Dec. 436, 448-449 (A.G.1961)); Cf. Kungys v. United States, 485 U.S. 759, 772 (1988)(holding, under statute providing for the denaturalization of naturalized citizens, 8 U.S.C.A. S 1451(a), that concealment or misrepresentation which has "a natural tendency to influence the decisions of the Immigration and Naturalization Service" is material).

11

In this case, the record fully supports a determination that both of the alternative definitions of materiality set forth in Matter of Kai Hing Hui are satisfied. As the BIA noted, INS Agent Hoechst testified that if she had known of the discrepancy between Mwongera's actual and reported lengths of stay, she would have pursued a further inquiry as to Mwongera's business activities and would have denied the visa on the basis of fraud. R. at 8. Consequently, the record supports a determination that Mwongera was excludable on the true facts and that his misrepresentation shut off a relevant line of inquiry. We conclude therefore that the BIA correctly found Mwongera excludable on the basis of a willful, material misrepresentation on his visa application.

IV.

Conclusion

For the foregoing reasons, we will deny the petition for review.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit