**UNITED STATES of America, Plaintiff,**

v.

**Hiram Cristobal REVE, Defendant.**

**CIVIL ACTION NO. 01–1483 (MLC).**

United States District Court, D. New Jersey.

Jan. 31, 2003.

Christopher J. Christie, United States Attorney (Neil R. Gallagher and Janice Montana, Office of District Counsel of United States Immigration & Naturalization Service, of counsel), Newark, NJ, for plaintiff.

Regis Fernandez, Newark, NJ, for defendant.

**AMENDED MEMORANDUM OPINION**

COOPER, District Judge.

This is an action to revoke and set aside the April 1996 order granting the 1995

application by the defendant, Hiram Cristobal Reve, for naturalized citizenship on the ground that it was procured by concealment of a material fact or by willful misrepresentation. 8 U.S.C. § 1451(a). The plaintiff ("the government") moves for summary judgment on the complaint, or alternatively to strike Reve's six affirmative defenses and preclude discovery as to those defenses. The defendant cross-moves for further discovery and leave to assert the additional defenses of laches and a due process violation. For the following reasons, the branch of the motion that is for summary judgment will be granted, the branch of the motion that is to strike the affirmative defenses and to preclude discovery will be denied as moot, and the cross motion will be denied as moot.

## BACKGROUND: APPLICATION FOR NATURALIZED CITIZENSHIP; RELEVANT NEW JERSEY CRIMINAL STATUTES; TIME–LINE OF EVENTS; and, RELEVANT PROCEDURAL HISTORY

### I. *Application for Naturalized Citizenship*

An application for naturalized citizenship should be denied unless the applicant "has been and still is a person of good moral character" during the period encompassing the five years preceding the application through the oath of allegiance. 8 U.S.C. § 1427(a)(3); *see* 8 C.F.R. § 316.10(a)(1). In addition:

1. The regulation under § 1182(a)(2)(A) states: An applicant shall be found to lack good moral character if during the statutory period the applicant:
   (i) Committed one or more crimes involving moral turpitude, other than a purely political offense, for which the applicant was convicted . . .;

   .  .  .  .  .

   (iv) Admits committing any criminal act covered by [the above-noted paragraph] . . .

No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was—

.  .  .  .  .

(3) a member of [a] class[ ] of persons, whether inadmissable or not, described in . . . subparagraph[ ](A) . . . of section 1182(a)(2) of this title . . . if the offense described therein, for which such person was convicted or of which he [sic] admits the commission, was committed during such period;

.  .  .  .  .

(8) one who at any time has been convicted of an aggravated felony (as defined in subsection (a)(43) of this section).

8 U.S.C. §§ 1101(f)(3) & (8). First, § 1182(a)(2)(A) states in relevant part:

(A) Conviction of certain crimes
   (i) In general
   . . . [Any] alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of—
   (I) a crime involving moral turpitude (other than a purely political offense) or an attempt or conspiracy to commit such a crime . . . is inadmissible.[1]

Second, according to the version of § 1101(a)(43) in effect in 1995 and 1996, an "aggravated felony" included:

for which there was never a formal charge, indictment, arrest, or conviction, whether committed in the United States or any other country.
8 C.F.R. §§ 316.10(b)(2)(i),(iv).

a crime of violence (as defined in section 16 of Title 18, but not including a purely political offense) for which the term of imprisonment imposed (regardless of any suspension of imprisonment) is at least 5 years.

8 U.S.C. former § 1101(a)(43)(F).[2] A "crime of violence" is:

(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16.

The government is authorized to institute a proceeding against a naturalized citizen to:

revok[e] and set[ ] aside the order admitting such person to citizenship and canceling the certificate of naturalization on the ground that such order and certificate of naturalization ... were procured by concealment of a material fact or by willful misrepresentation.

8 U.S.C. § 1451(a).

## II. Relevant New Jersey Criminal Statutes

### A. Sexual assault

Sexual assault is a crime of the second degree punishable by a term of imprisonment of five to ten years. N.J.S.A. §§ 2C:14–2(c), 2C:43–6(a)(2). An actor is guilty of sexual assault if the actor commits an act of sexual penetration with another person through physical force or coercion. N.J.S.A. § 2C:14–2(c)(1). An actor is also guilty of sexual assault if the actor commits an act of sexual penetration with a victim who is at least thirteen but less than sixteen years old and the actor is at least four years older than the victim. N.J.S.A. former § 2C:14–2(c)(5) (1995), re-codified, N.J.S.A. § 2C:14–2(c)(4) (Supp. 2002).

### B. Criminal sexual contact

Criminal sexual contact is a crime of the fourth degree punishable by a term of imprisonment not to exceed eighteen months. N.J.S.A. §§ 2C:14–3, 2C:43–6(a)(4). An actor is guilty of criminal sexual contact if the actor has sexual contact with the victim under any circumstances set forth in the aforementioned section 2C:14–2(c). N.J.S.A.§ 2C:14–3(b).

### C. Endangering Welfare of a Child

Endangering the welfare of a child in the third degree is punishable by a term of imprisonment of three to five years. N.J.S.A. §§ 2C:24–4, 2C:43–6(a)(3). A person who engages in certain conduct or causes certain harm to a child under the age of sixteen (e.g., sexual conduct impairing or debauching the child's morals) is guilty of this crime. N.J.S.A. § 2C:24–4(a).

## III. Time-line of Events

Reve became a lawful permanent resident alien of the United States in 1974. (Compl. at 2.) On July 7, 1995, a warrant

---

**2.** The term of imprisonment in the current version of § 1101(a)(43)(F) is "at least one year." Rape and sexual abuse of a minor are also on the current list of aggravated felonies. 8 U.S.C. § 1101(a)(43)(A). However, the government concedes that the version of § 1101(a)(43) in effect in 1995 and 1996 is relevant here. (Gov't Br. in Support of Mot. ("Gov't Br.") at 7 n. 1.) The Court also notes that—with the exception of § 1101(a)(43)— the 1995, 1996, and current versions of all federal and state statutes cited herein are substantially the same.

for Reve's arrest was issued because he was suspected of sexually assaulting a fourteen-year-old child in May 1995. (Montana Supp. Decl., Ex. F, 7–7–95 Warrant ("Warrant").) On July 12, 1995, he was arrested pursuant to the warrant. (*Id.*, Ex. C, 7–26–96 Judgment of Conviction ("J.Conv.").)

Reve's signed naturalization application was dated July 27, 1995, and filed July 31, 1995.[3] (Compl. at 2.) The application contained these two queries: (1) "Have you ever knowingly committed any crime for which you have not been arrested" and (2) "Have you ever been arrested, cited, charged, indicted, convicted, fined or imprisoned for breaking or violating any law or ordinance excluding traffic regulations." (Montana Supp. Decl., Ex. F, Applic. ("Applic."), Questions 15(a) & (b).) Further, in the case of an affirmative answer, the application directed the applicant to provide information on the nature of the offense and the outcome of any criminal action on a separate piece of paper. (Applic.) In response to both queries, Reve checked the boxes demarcated "No." (*Id.*)

Reve was indicted in New Jersey Superior Court, Union County, in November 1995 for sexual assault and criminal sexual contact. (Montana Supp. Decl., Ex. G, Indictment ("Ind.").) Sometime thereafter but before April 8, 1996, Reve was tried on the charges; the result was a hung jury. (Deft.'s Br. in Opp. & in Support of Cross–Mot. ("Deft.Br.") at 2.)

Reve's naturalization application was approved on March 11, 1996, and he was naturalized on April 8, 1996. (Montana Supp. Decl., Ex. L, Certif.) Reve does not contest that he failed to advise the government of his arrest and indictment on or before April 8, 1996. (Gov't Br. at 13–14.)

Reve, apparently facing a re-trial as to the charges, entered a plea of guilt to endangering the welfare of a child in the third degree and criminal sexual contact on May 8, 1996. (J. Conv.; Deft. Br. at 2.) Reve admitted at the plea hearing:

A: Basically I fondled myself for my self-gratification—

Q. We have to be a little more explicit. When you say you fondled yourself?

A. I—

Q. Penis?

A. Yes.

Q. Okay. And you did so for your own gratification, sexual gratification?

A. Yes.

Q. Now, did you do this in the presence of—?

A. [The victim.] Yes.

(Montana Supp. Decl., Ex. J, Plea Tr. ("Plea Tr.").) He was sentenced to three years probation on July 26, 1996. (J. Conv.)

### IV. *Relevant Procedural History*

The government, on becoming aware of Reve's criminal record, commenced an administrative denaturalization proceeding against him in 1998. (Montana Supp. Decl., Ex. R, Not. of Intent to Revoke.) This process was delayed when the propriety of such administrative proceedings became the subject of litigation for approximately two years. (Gov't Reply Br. at 20–21 n. 1; 7–26–02 Oral Arg. Tr. at 14–15.)

The government then commenced this action in March 2001 to revoke and set aside the order granting Reve's application for naturalized citizenship on the ground that it was procured by concealment of a material fact or by willful misrepresentation. (Compl.) Annexed to the complaint

---

**3.** Reve is proficient in the English language.

was an affidavit from an INS employee. (1–4–00 Martinez Aff.)[4] The affidavit asserted that Reve's "criminal record was material to determining his eligibility for naturalization because it would have had the natural tendency to influence the INS decision whether to approve his application." (*Id.* at 2.) It also asserted that had Reve:

revealed that he had been arrested for these crimes, his application for naturalization would not have been approved until he could have demonstrated that his criminal history did not affect his ability to establish good moral character. Because Mr. Reve was ultimately convicted of two crimes involving moral turpitude, he could not have established that he was a person of good moral character.

(*Id.* at 4.) Reve answered and asserted six affirmative defenses: (1) lack of subject matter jurisdiction; (2) failure to state a claim; (3) failure to set forth evidence showing good cause for cancellation of citizenship; (4) waiver; (5) res judicata; and (6) equitable estoppel. (Answer.)

The government moved for summary judgment on the complaint, or alternatively to strike Reve's six defenses and preclude discovery as to the defenses. (6–20–02 Not. of Mot.) In support of summary judgment, the government argued first that Reve's citizenship should be revoked because he failed to reveal his arrest and indictment for sexual assault in the good-character-determination period. The government argued that the sexual assault charge was an aggravated felony under § 1101(a)(43)(F) based on N.J.S.A. § 2C:14–2(c)(1). (7–26–02 Oral Arg. Tr. at 6–7; Gov't Br. at 7–8.) Second, the government argues that Reve's citizenship

should be revoked because he (1) failed to reveal his arrest and indictment for crimes of moral turpitude in the relevant time period and (2) eventually admitted to committing and was convicted of such crimes. (*Id.* at 8–10.)

The government submitted the affidavit of Raymond Simonse, who had approved Reve's application. (Simonse Decl. at 2.) Simonse asserted that if he had known of Reve's arrest and subsequent indictment, he would have (1) not approved the application; (2) scheduled an interview; (3) reviewed the application further; and (4) upon reviewing the judgment of conviction, recommended its denial. (*Id.* at 3–4.)

Reve opposed and cross-moved for further discovery and leave to assert two additional defenses of laches and due process. (Not. of Cross–Mot.; Deft. Br.) Reve argued that "in his [plea] deal with the State of New Jersey, [he] relied on his citizenship status" because he feared that he could be deported due to the plea if he were not a citizen. (*Id.* at 2.)

Reve also argued that the government ran a campaign to naturalize Hispanic voters in 1995; he attended a mass meeting and was rushed through the application process; he did not recall answering any particular application query; and, he gave no false testimony as to his application because he was never interviewed. (*Id.* at 2–5, 9.) He also argued that there is an issue as to whether "minorities may be given citizenship for partisan purposes only to be stripped of such citizenship after the elections." (*Id.* at 7.) The government replied and opposed the cross motion. (Gov't Reply.)

The Court, after hearing oral argument, ordered Simonse to be deposed; he was

---

**4.** The government is required to file an "affidavit showing good cause" along with the complaint. 8 U.S.C. § 1451(a).

deposed on September 26, 2002. (9–19–02 Order; 9–26–02 Tr.) Simonse testified at his deposition that the INS was not required to interview each applicant; applicants were asked to reveal changes in their application answers at the time of the oath of allegiance; and, an applicant would not be naturalized if the government knew the applicant had been arrested and the charges remained pending. (*Id.* at 43, 48.) Simonse also testified that Reve would have been interviewed and his application delayed, had he answered "yes" to the application queries concerning his criminal record. (*Id.* at 39–40.)

The parties then filed supplemental papers. (Gov't Supp. Mem.; Deft. Supp. Mem.; Gov't Reply to Deft. Supp. Mem.) The Court heard further oral argument on December 20, 2002, and has reviewed all of the filed papers and exhibits.

## DISCUSSION: SUMMARY JUDGMENT STANDARD; ARGUMENTS; and, *KUNGYS* TEST

### I. *Summary Judgment Standard*

A court may grant a motion for summary judgment

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). The movant bears the initial burden of showing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In an action to revoke and set aside an order granting naturalization, the movant meets the initial burden by submitting "evidence for revocation [that] must be clear, unequivocal, and convincing and not leave the issue in doubt." *United States v. Breyer,*

41 F.3d 884, 889 (3d Cir.1994) (citations and internal quotes omitted).

Once the movant has met that initial burden, the non-movant must present evidence establishing that a genuine issue of material fact exists, making it necessary to resolve the difference at trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Jersey Cent. Power & Light Co. v. Lacey Twp.,* 772 F.2d 1103, 1109 (3d Cir.1985). The non-movant, rather than rely on mere allegations, must present actual evidence that raises a genuine issue of material fact. *Anderson v. Liberty Lobby,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The Court must view the evidence in the light most favorable to the non-movant when deciding a summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The judge's role at the summary judgment stage is not to weigh the evidence, but to determine whether there is a genuine issue for trial. *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48, 106 S.Ct. 2505 (emphasis in original). A fact is material only if it might affect the outcome of the action under governing law. *Id.* at 248, 106 S.Ct. 2505; *Boyd v. Ford Motor Co.,* 948 F.2d 283, 285 (6th Cir.1991). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted).

District courts:

lack equitable discretion to refrain from entering a judgment of denaturalization against a naturalized citizen whose citizenship was procured ... by willful misrepresentation of material facts.... [C]ourts necessarily and properly exercise discretion in characterizing certain facts while determining whether an applicant for citizenship meets some of the requirements for naturalization.... But that limited discretion does not include the authority to excuse ... fraudulent procurement of citizenship.... [O]nce a district court determines that the Government has met its burden of proving that a naturalized citizen obtained his citizenship ... by willful misrepresentation, it has no discretion to excuse the conduct.

*Fedorenko v. United States,* 449 U.S. 490, 517, 101 S.Ct. 737, 66 L.Ed.2d 686 (1981).

## II. *Arguments*

### A. *Aggravated felony*

■ The Court will not address the government's argument that Reve's citizenship should be revoked because he was charged with an aggravated felony as defined by 8 U.S.C. former § 1101(a)(43). The government argues that "[p]ursuant to the express language of N.J.S.A. 2C:14–2(c)(1), the use of physical force or coercion against another is an element of sexual assault." (Gov't Br. at 7; *see id.* at 16–17). However, the Court's review of the indictment reveals that Reve was accused of (a) committing an act of sexual penetration on a fourteen year old and (b) being at least four years older than the victim. (Ind.) The sexual assault count references N.J.S.A. former § 2C:14–2(c)(*5*), *recodified,* N.J.S.A. § 2C:14–2(c)(*4*), not N.J.S.A. § 2C:14–2(*c*)(1). An arrest report also lists the charge as under N.J.S.A. former § 2C:14–2(c)(*5*). (Montana Supp. Decl., Ex. E, Arrest Report.)

The Court further notes that Reve admitted to touching himself, not the victim. (Plea Tr.) Because Reve apparently was not accused of using, attempting to use, or threatening to use force against the victim, the government has not shown that Reve was charged with an aggravated felony. *See* 8 U.S.C. former § 1101(a)(43)(F); 18 U.S.C. § 16(a).

Perhaps the government could have argued successfully that the sexual assault count under N.J.S.A. former § 2C:14–2(c)(5), *recodified,* N.J.S.A. § 2C:14–2(c)(4) involved a risk that physical force against the victim would be used in committing the offense, thereby making it an aggravated felony. 18 U.S.C. § 16(b). The government does not make this argument explicitly, and the Court will not address it *sua sponte* in the context of a summary judgment motion. The Court rejects the government's argument that Reve's citizenship should be revoked because he was charged with an aggravated felony.

### B. *Moral Turpitude*

■ The government, however, argues correctly (and without opposition) that the crimes to which Reve admitted, and for which he was arrested, indicted, and convicted, were crimes of moral turpitude. *Pichardo v. Immigr. & Natur. Serv.,* 104 F.3d 756, 757 & 759 (5th Cir.1997); *Morales–Alvarado v. Immigr. & Natur. Serv.,* 655 F.2d 172, 174 n. 1 (9th Cir.1981); *Castle v. Immigr. & Natur. Serv.,* 541 F.2d 1064, 1065–66 (4th Cir.1976); *Marciano v. Immigr. & Natur. Serv.,* 450 F.2d 1022, 1025 (8th Cir.1971). The Court will address the argument as to crimes of moral turpitude.

## III. *Kungys Test*

The government, to be awarded summary judgment, must show that: (1) Reve misrepresented or concealed a fact; (2) the

misrepresentation or concealment was willful; (3) the fact was material; and, (4) Reve procured citizenship as a result of the misrepresentation or concealment. *Kungys v. United States,* 485 U.S. 759, 767, 108 S.Ct. 1537, 99 L.Ed.2d 839 (1988).

The Court finds first that the government has met its initial burden of demonstrating that Reve misrepresented or concealed from the government his arrest for crimes of moral turpitude. Reve asserted on his application that he had not committed any crime for which he had not been arrested and that he had not been arrested, charged, indicted, or convicted for violating any law, when he had been arrested only two weeks before. Furthermore, he failed to advise the government of his indictment and first trial before taking the oath of allegiance.

The Court finds that the government has met its initial burden as to the second part of the test: that this misrepresentation or concealment was willful. It defies the imagination that Reve was unaware that he had been arrested for crimes of moral turpitude. In addition to providing false answers on his application, Reve neglected to correct those false answers in the eight-month period in which his application was pending. The Court finds that the misrepresentations on the application were deliberate and voluntary because Reve had to have known of their falsity. *Mwongera v. Immigr. & Natur. Serv.,* 187 F.3d 323, 330 (3d Cir.1999); *Witter v. Immigr. & Natur. Serv.,* 113 F.3d 549, 554 (5th Cir.1997); *Forbes v. Immigr. & Natur. Serv.,* 48 F.3d 439, 442 (9th Cir.1995); *Suite v. Immigr. & Natur. Serv.,* 594 F.2d 972, 973 (3d Cir.1979). The Court notes that the government was not required to submit proof of intent to deceive. *Mwongera,* 187 F.3d at 330.

Reve argues that the government must interview every naturalization applicant, and that the alleged failure to interview him prohibits the government from showing that his actions were willful. (Deft. Br. at 21.) The Court does not agree. The relevant statute merely states that the "Attorney General shall designate employees of the [INS] to conduct examinations." 8 U.S.C. § 1446(b). The statute confers authority to interview an applicant; it does not require an interview to occur. Reve also has supplied no support for the proposition that a verbal falsity is required to demonstrate willfulness. (7–26–02 Oral Arg. Tr. at 20 (Reve's counsel admitted to Court that there were no such cases).)

The Court finds that the government has met its initial burden as to the third part of the test: that this concealed information was material. As demonstrated by Simonse's declaration and deposition testimony, Reve's concealment and misrepresentations were material because they would have had a natural tendency to influence a determination concerning his application. *Witter,* 113 F.3d at 554; *Forbes,* 48 F.3d at 442–43. Reve's application would have received far more scrutiny had he answered the queries as to his criminal record with candor.

An applicant, furthermore, cannot demonstrate the required good moral character if the applicant commits crimes of moral turpitude during the relevant pre-oath-of-allegiance period and eventually is convicted of or admits to committing those crimes. 8 U.S.C. § 1182(a)(2)(A)(i)(I); 8 C.F.R. §§ 316.10(b)(2)(i),(iv). Here, the government has established that Reve's application would have been denied or at least deferred had he been truthful thereon, and thus those misrepresentations were material. *See United States v. Stelmokas,* 100 F.3d 302, 317–18 (3d Cir.1996) (holding misrepresentations material because further investigation would be warranted and naturalization denied if applicant revealed war record); *United States*

*v. Schiffer*, 831 F.Supp. 1166, 1204 (E.D.Pa.1993) (same), *aff'd without op.*, 31 F.3d 1175 (3d Cir.1994).

It necessarily follows that the government has met its initial burden as to the fourth part of the test: Reve procured citizenship as a result of the misrepresentation or concealment of his criminal record. Due to his false answers, the government was "denied the opportunity of investigating the moral character of [Reve] and the facts relating to his eligibility for citizenship." *United States v. Montalbano*, 236 F.2d 757, 760 (3d Cir. 1956) (citation omitted).

■ Reve is not saved by the affirmative defenses of waiver, equitable estoppel, or laches, because they are mere equitable doctrines. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002); *Heckler v. Cmty. Health Servs.*, 467 U.S. 51, 59, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984); *see Am. Trucking Ass'ns v. Smith*, 496 U.S. 167, 221, 110 S.Ct. 2323, 110 L.Ed.2d 148 (1990) (Stevens, J., dissenting). The Court lacks the equitable discretion to excuse Reve's conduct in procuring citizenship. *Immigr. & Natur. Serv. v. Pangilinan*, 486 U.S. 875, 883–84, 108 S.Ct. 2210, 100 L.Ed.2d 882 (1988); *Fedorenko*, 449 U.S. at 517, 101 S.Ct. 737; *Stelmokas*, 100 F.3d at 316.[5] Thus, his arguments in opposition must be rejected. As Reve has failed to rebut the government's prima facie showing, the

Court will grant summary judgment to the government.[6]

## CONCLUSION

The government has met its initial burden in support of the branch of its motion seeking summary judgment on the complaint. Reve has failed to rebut this successful showing. Thus, the government will be granted summary judgment. In light of the above disposition, Reve's cross motion and the remaining branch of the government's motion will be denied as moot. An appropriate order has been filed.

---

5. The Court will not address Reve's affirmative defenses concerning lack of subject matter jurisdiction, failure to state a claim, and failure to set forth evidence showing good cause for citizenship cancellation, as well as the proposed affirmative defense concerning due process, in light of this motion's disposition. The Court can find no support for Reve's res judicata defense; the approval of Reve's application does not bar the government from acting under 8 U.S.C. § 1451(a).

6. The Third Circuit, in a decision predating *Stelmokas*, decided therein not to resolve the availability of the laches defense in a denaturalization action, and instead held that "even if such a defense were available, [the defendant] has failed to establish the elements required to maintain the defense." *United States v. Koreh*, 59 F.3d 431, 445 (3d Cir. 1995). Thus, in an excess of caution, the Court permitted Reve to conduct limited further discovery in support of his affirmative defenses. However, Reve has pointed to no evidence leading the Court to determine that any of the aforementioned defenses have merit.