NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-4273
_____

HILDA B. GOZUN,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

_____

On Petition for Review from an
Order of the Board of Immigration Appeals
(Board No. A098-281-461)
Immigration Judge: Honorable Henry Dogin

_____

Submitted Under Third Circuit LAR 34.1(a)
April 13, 2010

Before: FISHER, HARDIMAN and COWEN, *Circuit Judges*.

(Filed: April 14, 2010)

_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

Hilda B. Gozun petitions for review of a final order of the Board of Immigration Appeals (BIA) ordering her removal from the United States because she made material misrepresentations to a United States consular official when applying for a visa. We will deny the petition.

## I.

Because we write for the parties, we recount only the facts necessary to our decision.

In 1997, Gozun went to the United States consulate in Manila, Philippines, to obtain a visitor's visa. Gozun presented various documents, including a falsified birth certificate stating she was "Hilda Calderon Valmonte," born on November 22, 1980. In reality, Gozun was born eight years earlier, on November 22, 1972. The birth certificate also falsely identified Anthony Valmonte, who procured the forged birth certificate for Gozun and accompanied her to the consulate, as her father.[1]

Using a Philippine passport that also identified her as "Hilda Calderon Valmonte," Gozun entered the United States on September 5, 1997 as a non-immigrant visitor with permission to remain until March 4, 1998. Instead of leaving the United States, Gozun began living and working in New Jersey. In 2002, Gozun's employer filed a petition to

_____

[1] In the proceedings below, Valmonte is variously identified as "Vermonte," "Fermonte," and "Valmonte." We use "Valmonte" because Gozun obtained travel documents using that name.

2

obtain an alien worker visa for her. After the petition was approved in 2004, Gozun asked the Department of Homeland Security (DHS) to classify her as a lawful permanent resident of the United States. In a subsequent interview with a DHS official, Gozun admitted to using a counterfeit birth certificate to obtain her visitor's visa in 1997. Consequently, her petition was denied.

In 2005, DHS commenced proceedings to remove Gozun from the United States, contending she was inadmissible under 8 U.S.C. § 1182(a)(6)(C)(i) and therefore subject to removal under 8 U.S.C. § 1227(a)(1)(A) because she made material misrepresentations when obtaining her visitor's visa in 1997.[2] At a hearing before the Immigration Judge (IJ), Gozun admitted making false statements to obtain her visa in 1997 but denied that her misrepresentations were material. The IJ disagreed, finding Gozun's false statements were material because they "cut off a line of inquiry" by consular officials into her actual age, family history, and personal circumstances. Such information, the IJ reasoned, was relevant to a determination of whether Gozun should have been issued a visitor's visa. The IJ thus concluded that Gozun was inadmissible and subject to removal under 8 U.S.C. § 1227(a)(1)(A). Accordingly, the IJ denied her petition for classification as a

---

[2] In a supplemental filing, DHS also alleged that Gozun was subject to removal under 8 U.S.C. § 1227(a)(1)(B) because she had remained in the United States beyond the expiration of her visa on March 4, 1998. Gozun apparently did not contest this allegation.

lawful permanent resident and ordered her removed to the Philippines. After the BIA

summarily affirmed the IJ's determination, Gozun petitioned this Court for review.[3]

## II.

We have jurisdiction over Gozun's petition for review of the BIA's final order of

removal pursuant to 8 U.S.C. § 1252. We review the BIA's factual findings to determine

whether they are "supported by reasonable, substantial, and probative evidence on the

record considered as a whole." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992). We will

reverse the BIA's factual findings only if the evidence "was so compelling that no

reasonable factfinder could fail to find" for the petitioner. *Id*. at 483-84. "To the extent

that the BIA's decision rests on an interpretation of the agency's governing statute on a

matter as to which Congress has not expressed a clear intent, we defer to the agency's

reasonable interpretation of the statutory language." *Mwongera v. INS*, 187 F.3d 323, 327

(3d Cir. 1999) (citing *INS v. Aguirre-Aguirre*, 526 U.S. 415 (1999)).

## III.

The present case arose when Gozun petitioned DHS to adjust her status to that of a

lawful permanent resident alien. An alien seeking an adjustment of status is removable

from the United States if she is inadmissible under existing immigration law. 8 U.S.C. §

1227(a)(1)(A). And an alien "who, by fraud or willfully misrepresenting a material fact,

---

[3] Because the BIA largely adopted the findings and analysis of the IJ, we may review the portions of the IJ's opinion on which the BIA relied. *See Camara v. Attorney General*, 580 F.3d 196, 201 (3d Cir. 2009).

4

seeks to procure (or has sought to procure or has procured) a visa" is inadmissible. 8 U.S.C. § 1182(a)(6)(C)(i). Here, the IJ concluded—and the BIA agreed—that the material misrepresentations Gozun made to obtain her visa in 1997 rendered her inadmissible under 8 U.S.C. § 1182(a)(6)(C)(i) and therefore subjected her to removal under 8 U.S.C. § 1227(a)(1)(A).

Gozun does not dispute that she made misrepresentations when she obtained her visitor's visa. Rather, she contends the IJ and BIA incorrectly found her misrepresentations material because she may have been issued a visa even if she had told consular officials the truth. Because her misrepresentations were not material, argues Gozun, she was not inadmissible under 8 U.S.C. § 1182(a)(6)(C)(i).

Although Gozun correctly notes that materiality has not been defined precisely, the BIA has long considered a false statement in a visa application to be material "if it tends to shut off a line of inquiry which is relevant to the alien's eligibility, and which might well have resulted in a proper determination that he be excluded." *Matter of Ng*, 17 I. & N. Dec. 536, 537 (B.I.A. 1980); *Matter of S-and B-C-*, 9 I. & N. Dec. 436, 448-49 (B.I.A. 1961). Because the BIA's definition of a material misrepresentation is a reasonable interpretation of the relevant statutory language, we defer to it. *See Mwongera*, 187 F.3d at 330.

The record indicates that Gozun's misrepresentations were undoubtedly material under the BIA's definition. By falsifying her birth certificate, Gozun presented herself as

5

a teenage girl who sought to visit the United States with her father, Valmonte. These misrepresentations shut off a line of inquiry that was relevant to Gozun's eligibility for a visa by preventing consular officials from inquiring into the true details of her family history and personal circumstances. Had officials considering Gozun's visa application known the truth—that she was a twenty-four-year-old woman with only a part-time job who wished to travel alone to the United States—they might well have questioned whether Gozun actually would return to the Philippines when her visa expired and thus acted differently on her application. By misleading consular officials, Gozun prevented them from exploring potentially relevant facts which could have informed their determination of whether to issue her a visitor's visa. The BIA's determination that Gozun's misrepresentations were material was thus supported by substantial evidence.

Gozun claims a remand is warranted because the BIA did not examine whether "disclosure of the true facts would have led to a denial of the visa petition." In support of this argument, Gozun notes the IJ's observation that it was possible consular officials would have issued the visa even if Gozun had told the truth. *See* App. at 44 ("[W]ho knows what the consul would have done[?] They may have denied the visa. They may have issued the visa."). But the relevant inquiry is not whether officials necessarily would have denied her visa application had they known the truth. Instead, the BIA's definition asks whether further investigation into information concealed by Gozun "*might well have resulted*" in a refusal of her application. *Matter of Ng*, 17 I. & N. Dec. at 537

(emphasis added). As we have noted, consular officials might well have denied Gozun's visa application had they known the truth about her. Accordingly, the BIA's failure to examine whether the facts concealed by Gozun definitely would have resulted in a denial of her application does not require remand.[4]

## IV.

Because the determination of the BIA was supported by substantial evidence in the record, we will deny Gozun's petition for review.

---

[4] Gozun's argument that her misrepresentations did not confer upon her an immigration benefit also fails because it does not change the fact that she deprived consular officials of the opportunity to probe relevant facts that might well have led to the denial of her visa application.