MATTER OF KWAN

In Visa Petition Proceedings

A-17113672

*Decided by Board July 13, 1972*

As the validity of many claimed Chinese adoptions must be determined without benefit of a recorded formal adoption decree, resort must be had to other forms of probative evidence. Affidavits, photographs, letters, evidence of support, of residence, and other relevant documents should be submitted. Photographs should be positively identified and verified under oath. Petitioner should make clear what prior familial realtionship, if any, existed between the parties to the claimed adoption. Petitioner should submit (or satisfactorily explain the absence of) affidavits executed by (1) both adoptive parents, (2) witnesses to the adoption ceremony, and (3) relatives and neighbors. Affidavits submitted should (1) state the nature of the affiant's relationship, if any, to the parties; (2) set forth the basis of affiant's knowledge; and (3) contain a statement of the facts affiant knows regarding the adoption, rather than mere conclusory statements as to the existance of the adoption. Information in an affidavit should not be disregarded simply because it appears to be hearsay; in administrative proceedings, that fact merely affects the weight to be afforded it. Additionally, there is an exception to the hearsay rule relative to statements as to pedigree and family history made by relatives or members of the same community.

ON BEHALF OF PETITIONER:    Pro se

The United States citizen petitioner applied for preference status for the beneficiary as her adopted daughter under section 203(a)(1) of the Immigration and Nationality Act. The District Director approved the petition on January 2, 1971. However, his initial approval was revoked on August 9, 1971, on the basis of this Board's decision in *Matter of Yiu*, Interim Decision No. 2061 (BIA, 1970). The petitioner appeals from the revocation. The appeal will be sustained, but the case will be remanded.

The beneficiary is a female who was born in China on December 5, 1946. The file contains a written agreement of adoption dated August 20, 1949, as well as other supporting affidavits.

The District Director's revocation of his initial approval was prompted by a letter from the United States consulate in Hong Kong calling the District Director's attention to this Board's

decision in the *Yiu* case, which was rendered on November 19, 1970. The letter requested reconsideration and possible revocation on the basis of the *Yiu* decision.

The District Director's reliance upon the *Yiu* decision as authority for revoking his initial approval of the petitioner's application was misplaced. Inasmuch as the adoption in question evidently took place in 1949, it would be governed by the adoption provisions of the Civil Code of the Nationalist Republic of China. These provisions went into effect on May 5, 1931 and remained in effect until the Communist takeover in 1950. The law applicable to the *Yiu* case, on the other hand, was the Ching Code, which ceased to have effect in mainland China upon being superseded by the 1931 adoption law.

In any event, the *Yiu* case no longer serves as a precedent decision. Subsequent to the District Director's decision to revoke the initial approval of the petitioner's application, this Board had occasion to reconsider the principles enunciated in the *Yiu* case. As a result, in our recent precedent decision in *Matter of Ng*, Interim Decision No. 2147 (BIA, April 28, 1972), we expressly overruled our earlier holding in the *Yiu* case.

In addition, in *Matter of Kwok*, Interim Decision No. 2145 (BIA, April 25, 1972), we rejected the Service's argument that Chinese adoptions, even though valid under the law of the place where the adoption status was created, nevertheless do not constitute "adoptions" for immigration purposes if not created as a result of a "juridical act."

Even though the legal impediments to the recognition of Chinese adoptions in general, and the adoption of females in particular, have been removed, each petition based upon an adoptive relationship still must be considered from the factual point of view. In visa petition proceedings the burden of proof to establish eligibility for the benefit sought under the immigration laws rests with the petitioner, *Matter of Brantigan*, 11 I.& N. Dec. 493 (BIA, 1966). An application for preference classification must be accompanied by evidence of family relationship, 8 CFR 204.2(c)(1).

Inasmuch as most Chinese adoption cases must be decided without benefit of a recorded formal decree of adoption, it is permissible to resort to other forms of probative evidence in order to reach a decision as to the validity of the adoption.

For instance, it would be proper for the petitioner to submit affidavits executed by (1) both adoptive parents, (2) witnesses to the adoption ceremony, and (3) relatives and neighbors. The absence of such affidavits is a factor the petitioner must satisfactorily explain. Affidavits submitted should (1) state the nature of the affiant's relationship, if any, to the parties, (2) set forth the

basis of the affiant's knowledge, and (3) contain a statement of the facts the affiant knows regarding the adoption, rather than mere conclusory statements as to the existence of the adoption. Information contained in an affidavit should not be disregarded simply because it appears to be hearsay. In administrative proceedings that fact merely affects the weight to be afforded such evidence, not its admissibility. It should also be noted that there is an exception to the hearsay rule on behalf of statements as to pedigree and family history made by (1) relatives or (2) members of the same community.

In the present case the petitioner has based her entire claim upon a written adoption agreement and the affidavits of herself, the beneficiary and two fellow villagers. These affidavits fail to mention the basis of knowledge of the latter two persons or their relationship to the parties. All four affidavits fail to recite the actual details surrounding the claimed adoption. Hence, we are unable to consider them sufficient corroboration for the written agreement of adoption.

It is well known that the Chinese possess particularly strong family ties and sentiments. Hence, we believe that it would be reasonable to expect in most cases where a genuine adoption has taken place that the persons involved would have taken numerous family photographs over the years. This might not be true, of course, in the case of persons living in remote areas with limited access to photographic facilities or equipment. Such pictures should be positively identified, verified under oath and submitted with the application. In the present case none have been submitted, despite the fact that the adoption purportedly took place back in 1949. The unavailability of such pictures is a factor that should be explained to the satisfaction of the District Director.

Frequently, as in the present case, it is claimed that an adoption took place while the adoptive father was not present. It was held, in *Matter of Y–K–W–*, 9 I. & N. Dec. 176 (A.G., 1961), that the two-year legal custody and residence requirement contained in section 101(b)(1)(E) of the Immigration and Nationality Act may be satisfied when custody and residence have been with only one of the adoptive parents. However, there must be sufficient evidence in the record from which the District Director could conclude that the custody and residence requirements have been met on the part of at least one of the parents. In the present case all that we are able to glean from an examination of the file is the fact that the petitioner's spouse left China in 1933 and went to the Philippines, where he presently resides. There is no information as to when the petitioner and the beneficiary left China and made their way to Hong Kong. No evidence as to the residences of the

177

parties has been presented. We must conclude, therefore, that the present record is insufficient to show compliance with the residence and custody requirements of section 101(b)(1)(E).

In cases such as the present one, involving adoptions claimed to have occurred in mainland China under the Nationalists, the adoption provisions of the Civil Code of the Republic of China must be taken into account.

Two sections of the Civil Code may be relevant to this case. First, Article 1074 of the Code required that when a married person adopted a child, he secured the consent of his spouse. See *Matter of Jue*, 12 I. & N. Dec. 296 (BIA, 1967). Second, Article 1080 provided for termination of an adoption by mutual consent. See *Matter of Lee*, Interim Decision No. 2098 (BIA, 1972).

In the present case, the file before us contains no solid probative evidence that the petitioner's spouse consented to an adoption. Indeed, it is noteworthy that there is nothing at all from him, even though he is presumably alive in the Philippines. The absence of an affidavit from him has not been satisfactorily explained. We also note the absence of any letters from him, or evidence that he contributed to the support of the beneficiary. As a result, we are not prepared to find that the petitioner has demonstrated compliance with the requirements of Article 1074 of the Civil Code, and we cannot rule out the possibility that the adoption was terminated by mutual consent pursuant to Article 1080 of the Civil Code.

In any Chinese adoption case the petitioner should make clear what prior familial realtionship, if any, existed between the parties to the claimed adoption. In *Matter of Yuen*, Interim Decision No. 2130 (BIA, 1972), we said that such factors as an uncle-nephew relationship, or that the alleged adopted child continued to remain with his natural parents instead of coming under the parental control of the alleged adoptive parent cast doubt upon the bona fides of the adoption. When such factors are present, the doubt raised must be explained away by means of sufficient evidence.

In the present case it was not disclosed until the notice of appeal was filed that the petitioner is the aunt of the beneficiary. That fact was never before the District Director for his consideration. The doubt raised as to the bona fides of the adoption has not been eliminated.

In sum, a number of questions have been raised which have not been fully explored or satisfactorily explained. We feel that further development of the issues present in this case is essential before any determination can be made by us. Even though we shall sustain the appeal on the ground that the revocation was not correct for the reason given, we are unable to reinstate the

approval of the petition initially granted by the District Director. The case will be remanded and the following order will accordingly be entered.

**ORDER:** The appeal is sustained, but the case is remanded to the District Director for further proceedings consistent with the foregoing opinion.