# United States Court of Appeals
## For the First Circuit

No. 10-1750

JUAN FERNANDO RESTREPO,

Petitioner,

v.

ERIC H. HOLDER, JR.,
ATTORNEY GENERAL OF THE UNITED STATES,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Torruella, Circuit Judge,
Souter,* Associate Justice,
and Boudin, Circuit Judge.

Randy Olen, on brief for petitioner.
Nancy E. Friedman, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, Tony West, Assistant Attorney General, Civil Division, and Richard M. Evans, Assistant Director, on brief for respondent.

April 12, 2012

_____

* The Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**TORRUELLA, Circuit Judge.** Juan Fernando Restrepo ("Restrepo"), a native and citizen of Colombia, asks us to review a decision of the Board of Immigration Appeals ("BIA") denying his application for cancellation of removal under Section 240A(b) of the Immigration and Nationality Act ("INA"). After carefully considering Restrepo's claims, we deny his petition for review.

## I. Background

Restrepo entered the United States on or about September 24, 1988 as a visitor with permission to remain in the country until March 23, 1989. Restrepo overstayed his visa and, in 1990, married his wife, María, a fellow Colombian national. In the ensuing years, the couple settled in the United States and had two children.

According to Restrepo, by 1995, all was not well between the couple -- Restrepo was unfaithful and María discovered his infidelity. Restrepo soon moved out of the family home in Pawtucket, Rhode Island and moved in with his sister.

In February 1996, Restrepo's father petitioned for an immigrant visa (Form I-130) on Restrepo's behalf. Restrepo's father filed his petition under section 203(a)(2)(B) of the INA, 8 U.S.C. § 1153(a)(2)(B), which permits "unmarried sons or unmarried daughters" of an alien who has been lawfully admitted for permanent residence in the United States to obtain a visa. The petition was approved on September 10, 1996, despite the fact that

Restrepo and María, though separated, were still married at the time.

Restrepo and María finalized their divorce just one month later, in October 1996. That same month, María married Carlos Ríos ("Ríos"), a U.S. citizen. Subsequently, Ríos filed an immigrant visa petition for María and she eventually attained lawful permanent resident ("LPR") status as Ríos's spouse.

At some point in 1999, María and Restrepo ostensibly reconciled their differences. In 2000, the couple had a third child, though María and Ríos were still married at the time. María eventually divorced Ríos in September 2001 and remained with Restrepo thereafter, remarrying him on March 14, 2004.

Also in September 2001, Restrepo -- who still held the immigrant visa that he obtained in September 1996 -- filed to adjust his status to that of LPR. The relevant paperwork, it seems, raised bureaucratic eyebrows: on May 3, 2004, the Department of Homeland Security denied Restrepo's request for adjustment and revoked his immigrant visa once it determined that, since Restrepo was still married to María in September 1996, he was ineligible for the visa at the time his father filed an immigrant visa petition on his behalf. The government set Restrepo's removal proceedings in motion on the same day.

Restrepo conceded removability, but applied for cancellation of removal under INA § 240A(b) and voluntary departure

under INA § 240B.  See 8 U.S.C. §§ 1229b-c.  Over the next few years,[1] Restrepo submitted evidence in support of his application for cancellation, including letters and affidavits prepared on his behalf.  Restrepo and María also testified at hearings held before an immigration judge ("IJ") in July 2008 and February 2009.

The IJ denied Restrepo's application for cancellation of removal on February 18, 2009.  In denying Restrepo's application, the IJ found that Restrepo had failed to show that he was a "person of good moral character" while living in the United States, see 8 U.S.C. § 1229b(b)(1)(B), insofar as facts did not suggest that his 1996 divorce from María "was anything other than a sham to enable him to adjust status on the basis of the visa petition that his father had submitted for him."  Explaining her reasoning, the IJ noted that Restrepo had a third child with María while she was married to Ríos and underscored her belief that María had given "conflicting information" about her reasons for divorcing Ríos.  Most critically, the IJ expressed grave concerns about the fact that Restrepo remarried María, by then an LPR, less than two months before his petition for adjustment of status was denied and his

---

[1]  Restrepo's removal proceedings were continued for a brief period of time because in March 2005, María, who by then had been remarried to Restrepo for about a year, filed a visa petition on his behalf by virtue of her status as a permanent resident applying for naturalization.  However, in April 2005, the U.S. Citizenship and Immigration Services denied María's naturalization application when it determined that María's marriage to Ríos (which had allowed her to obtain LPR status) was a sham.  Restrepo's removal proceedings then resumed.

visa revoked. The IJ found this timing "disturbing" and "significant" because neither the letters nor the affidavits that various people submitted to support Restrepo's application for cancellation of removal mentioned that he was divorced and later remarried. The IJ also noted that one of Restrepo's daughters, who testified at his hearings, did not mention having suffered emotional problems as a result of the divorce. Additionally, the IJ noted that although testimony suggested that Restrepo was an avid churchgoer, his pastor was "unaware that [Restrepo] and [María] were divorced and did not remarry for over four years after they began living together again."

Going further, the IJ also concluded that Restrepo and María had provided false testimony before the immigration court to the extent that they stood by their claims that they divorced for legitimate reasons not related to obtaining immigration benefits. The IJ cited the timing of the purported marital falling out and divorce -- i.e., the fact that the couple separated just before Restrepo's father filed a visa application on his behalf -- and María's marriage to Ríos, a U.S. citizen, shortly thereafter as supportive of her conclusion. The IJ also noted that María remembered peculiarly little about her marriage to Ríos and could not show that she ever lived with him. In light of the "significant disruption" that Restrepo's removal would cause on his family, the IJ stated that she might have been willing to give him

the benefit of the doubt if Restrepo had come clean as to the true immigration status adjustment-related motives behind the couple's divorce. Ultimately, however, the IJ explained that she could hardly overlook the fact that Restrepo not only engaged in a sham divorce, but also offered false information in his adjustment filings and in his testimony to the court. Accordingly, the IJ determined that, as a person lacking good moral character, Restrepo was statutorily barred from obtaining either cancellation of removal or voluntary departure.

Restrepo appealed and the BIA affirmed the IJ's decision on May 24, 2010. See In re Juan Fernando Restrepo, No. A079-738-001 (B.I.A. May 24, 2010). The BIA noted that it was required to accept the IJ's factual determinations unless they were clearly erroneous. See 8 C.F.R. § 1003.1(d)(3)(i) (BIA "will accept the determination of factual issues by an immigration judge . . . unless the determination is clearly erroneous"). The BIA then recounted the evidence the IJ used to buttress her decision and concluded that it was sufficient to affirm her conclusions regarding Restrepo's lack of good moral character.

## II.  Discussion

### A.  Cancellation of Removal and Our Authority to Review Restrepo's Petition

Under 8 U.S.C. § 1229b(b), the BIA may grant cancellation of removal if the petitioner establishes certain requirements. See Toribio-Chávez v. Holder, 611 F.3d 57, 64 (1st Cir. 2010).

Specifically, cancellation may issue if an alien "(a) has resided in the United States for a continuous period of ten years; (b) has been a person of good moral character during such period; (c) has not been convicted of certain offenses; and (d) has established that removal would result in exceptional and unusual hardship to a qualifying family member." Id. It is the second of the above-cited eligibility factors -- requiring an alien applying for cancellation of removal to show that he has been a "person of good moral character" while residing in the United States for an uninterrupted ten-year period -- that is important to Restrepo's petition.[2]

The regime that Congress has set in place narrowly defines our authority to review a petition like Restrepo's. The provision codified at 8 U.S.C. § 1252 "divests federal courts of jurisdiction to review 'any judgment regarding the granting of relief' relative to cancellation of removal." González-Ruano v. Holder, 662 F.3d 59, 63 (1st Cir. 2011) (internal citation omitted). The statute thereby leaves the matter of whether an alien should receive such relief to the Attorney General's

---

[2] During proceedings before the IJ, the government did not dispute that Restrepo had resided in the United States for ten years before being placed in removal proceedings nor did it contest Restrepo's claim that removal would result in exceptional and extremely unusual hardship to his family members. The IJ determined that Restrepo had established these factors. Whether Restrepo had been convicted of any of the various offenses that would bar him from cancellation of removal relief does not appear to have been at issue.

-7-

discretion and precludes our review in the absence of a "colorable constitutional claim or question of law."  <u>Elysee</u> v. <u>Gonzales</u>, 437 F.3d 221, 223 (1st Cir. 2006); <u>see also</u> <u>Cruz-Camey</u> v. <u>Gonzales</u>, 504 F.3d 28, 29 (1st Cir. 2007).

Within this context, the manner in which we approach a finding of lack of good moral character could unfold in either of two ways, depending on whether or not the agency exercised its discretion in reaching its determination.  <u>See</u>  <u>Bernal-Vallejo</u> v. <u>I.N.S.</u>, 195 F.3d 56, 62 (1st Cir. 1999) (noting good moral character determination "may involve either a non-discretionary question of fact or a discretionary determination").  Because "a finding of lack of good moral character is <u>required</u>, under 8 U.S.C. § 1101(f), for aliens belonging to certain per se categories," <u>id.</u> (emphasis added), a determination that an alien may not receive cancellation of removal relief because he belongs to any of those statutorily-defined categories presents a non-discretionary determination which we would be able to review for substantial evidence.  However, our review of a determination of lack of good moral character that is not grounded on the <u>per se</u> categories found in § 1101(f) -- that is, a discretionary finding -- would still lie outside of our jurisdiction and would be accordingly barred from review.  <u>See</u> <u>id</u>.

**B. Determination that Restrepo Offered False Testimony**

Where, as here, the BIA adopts an IJ's decision but opts to offer a glimpse into its considerations, we review both the decision of the BIA and the IJ. See Wiratama v. Mukasey, 538 F.3d 1, 3 (1st Cir. 2008).

In this case, the IJ's character findings as to Restrepo appear to have been twofold. First, the IJ determined that Restrepo lacked good moral character insofar as it was evident to her that Restrepo had engaged in a sham divorce for the purpose of securing immigration benefits. Second, the IJ found that Restrepo and his wife had provided false testimony to the court regarding the reasons behind their divorce. The latter reason, the IJ explained, forced her hand and rendered her unable to give Restrepo the benefit of the doubt as to whether he had been a person of good moral character during the relevant period. See 8 U.S.C. § 1101 (f)(6) (precluding a person who has "given false testimony for the purpose of obtaining [immigration] benefits" from being found to have "good moral character"); see also Toribio-Chávez, 611 F.3d at 64 n.6.

The IJ's binary findings thus bring us to a natural pause in our discussion. Because the IJ's determination that Restrepo underwent a sham divorce and was thus barred from being regarded as a person of good moral character rested on discretionary grounds, our inquiry could very well be at an end. See Zajanckauskas v.

-9-

<u>Holder</u>, 611 F.3d 87, 89 (1st Cir. 2010) ("'If there are two alternative grounds for a decision and we lack jurisdiction to review one, it would be beyond our Article III judicial power to review the other. Absent authority to review the discretionary ground, any opinion . . . reviewing the nondiscretionary ground could not affect the final order's validity and so would be advisory only.'" (alterations omitted) (quoting <u>Ekasinta</u> v. <u>Gonzales</u>, 415 F.3d 1188, 1191 (10th Cir. 2005))).

We hesitate, however, to turn away at the threshold. Although at first blush the IJ's alternate and discretionary basis for her holding appears to foreclose our review of Restrepo's petition, the IJ nevertheless noted that she could have given Restrepo the benefit of the doubt as to his being a person of good moral character during the requisite period <u>but for</u> her collateral conclusion that Restrepo had provided false testimony to the court. It therefore seems that the IJ ultimately predicated her decision to deny Restrepo cancellation of removal relief on her finding that he had offered false testimony at his immigration hearings. Since false testimony presents a non-discretionary ground for denial that is within the scope of our jurisdiction, <u>see</u> 8 U.S.C. § 1101(f)(6), we proceed to review the agency's reasoning for substantial evidence. Under this standard, "[w]e review the agency's factual findings, including credibility determinations . . . and may overturn those findings only if 'any reasonable adjudicator would

be compelled to conclude the contrary.'" <u>Lin</u> v. <u>Gonzales</u>, 503 F.3d 4, 7 (1st Cir. 2007) (quoting 8 U.S.C. § 1252(b)(4)(B)).

As noted above, a person found to have provided false testimony "during the period for which good moral character is to be established," 8 U.S.C. § 1101(f)(6), is <u>per se</u> deemed to lack good moral character.  For our present purposes, false testimony "is limited to oral statements made under oath" and, specifically, "only to those misrepresentations made with the subjective intent of obtaining immigration benefits." <u>Kungys</u> v. <u>United States</u>, 485 U.S. 759, 780 (1988).  Misrepresentations made to satisfy other motives -- <u>e.g.</u>, embarrassment, fear, or a desire for privacy -- do not qualify as false testimony under the statute.  <u>See</u> <u>id.</u>

Restrepo does not fare well on the merits.  Substantial evidence in the record supports the IJ's determination -- and the BIA's reasoned affirmance of the IJ's finding -- that Restrepo, while under oath, provided false testimony at his immigration hearings regarding the motives underlying his divorce from María in 1996.  Here, the IJ and the BIA both considered several facts that, taken together, they determined significantly undermined Restrepo's credibility.  The IJ, in particular, expressed her skepticism that none of the authors of the several letters Restrepo submitted in support of his application -- some of whom had known Restrepo for at least 25 years -- alluded to the fact that Restrepo and María had been divorced or separated.  Further, the IJ and the BIA both

-11-

noted that once divorced, María married Ríos, a U.S. citizen, almost immediately thereafter and subsequently obtained LPR status as Ríos's spouse. The BIA's decision also recounted other evidence upon which the IJ relied, such as the fact that Restrepo and María conceived a child while she was married to Ríos; that Restrepo remarried María in March 2004 just a few months before Restrepo was placed in removal proceedings; and that, once remarried to Restrepo, María almost immediately filed an alien relative petition on his behalf. It was reasonable for both the IJ and the BIA to conclude that this evidence supported a conclusion that Restrepo offered false testimony inasmuch as he insisted at his hearings before the IJ that he divorced María for legitimate reasons unrelated to securing immigration benefits. We accordingly find no reason to affect the IJ's credibility determination or corollary finding that Restrepo is statutorily precluded from obtaining cancellation of removal relief. See Toribio-Chávez, 611 F.3d at 64-65 (upholding denial of cancellation of removal due to § 1101(f)(6) per se lack of good moral character finding based, in part, on IJ's finding that petitioner's testimony was not credible); Becerril v. Holder, No. 07-71290, 2010 WL 236152, at *1 (9th Cir. Jan. 21, 2010) (same).

## C.  Adverse Credibility Determination

In his briefing to this Court, Restrepo heavily relies on In re A-S-, 21 I. & N. Dec. 1106 (B.I.A. 1998), which he claims

should have guided the analysis the BIA followed when it assessed the IJ's credibility findings. Under In re A-S-, discrepancies or omissions going to the heart of a petitioner's claim may support an adverse credibility finding, but only where a three-prong test is also satisfied. The BIA thus accords deference to an IJ's adverse credibility determination if:

> (1) the discrepancies and omissions described by the Immigration Judge [are] actually [] present in the record;
> (2) the discrepancies and omissions [] provide specific and cogent reasons to conclude that the alien provided incredible testimony; and
> (3) a convincing explanation for the discrepancies or omissions [are] not [] supplied by the alien.

Hoxha v. Gonzales, 446 F.3d 210, 214 (1st Cir. 2006).

The government parries Restrepo's claim that the BIA should have worked within the In re A-S- framework by noting that the BIA's decision in that case and our application of the cited factors in Hoxha v. Gonzales, 446 F.3d 210 (1st Cir. 2006), were circumscribed to the asylum context. In particular, the government appears to contend that these cases are solely apposite to asylum claims examined under the rubric in place before the enactment of the REAL ID Act, which became effective on May 11, 2005. See Kartasheva v. Holder, 582 F.3d 96, 104 n.7 (1st Cir. 2009) (noting that in cases predating REAL ID Act an "IJ's adverse credibility finding 'cannot rest on trivia but must be based on discrepancies that involved the heart of the asylum claim.'" (quoting Hem v.

Mukasey, 514 F.3d 67, 69 (1st Cir. 2008) (internal quotations omitted)); see also Dehonzai v. Holder, 650 F.3d 1, 10 n.11 (1st Cir. 2011) ("Following passage of the REAL ID Act, an adverse credibility determination may be based on an inconsistency in the applicant's testimony 'without regard to whether [the] inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim.'" (quoting 8 U.S.C. 1158(b)(1)(B)(iii))).

We are not convinced that these cases can be so easily distinguished from the one before us and note that the BIA has cited the In re A-S- three-pronged framework for assessing an IJ's credibility determinations in deciding an appeal involving a denial of an alien's application for cancellation of removal at least once in the past. See In re: Bruno Alfredo Dellepiane, No. A26-608-123, 2007 WL 2463970 (B.I.A. Aug. 1, 2007) (unpublished decision). However, even if the In re A-S- framework were applicable in this context, it would not help Restrepo. Under the In re A-S- three-pronged assessment, for the BIA to accept the IJ's credibility determination, it would have had to conclude that (1) Restrepo's and María's testimony conflicted with other evidence in the record; (2) the discrepancies were reason enough to conclude that Restrepo and María were not credible; and (3) Restrepo failed to provide a convincing reason for the discrepancies. While the BIA's decision here did not expressly cite In re A-S-, its reasoning clearly satisfied all three elements.

-14-

First, as explained above, the IJ noted that not one of the letters or affidavits submitted by others in support of Restrepo's application mentioned his divorce from María. Thus, even assuming that Restrepo's and María's testimony before the IJ was internally consistent, the IJ concluded that this testimony conflicted with other evidence on record and the BIA explicitly alluded to the IJ's finding on this issue. As we have explained supra, the IJ's determination on this issue was supported by substantial evidence.

Second, although he does not do so directly, it would be a nonstarter for Restrepo to argue that the discrepancies the IJ cited do not "provide specific and cogent reasons" to support an adverse credibility finding. In re A-S-, 21 I. & N. Dec. at 1109. The discrepancies and gaps between testimony and record evidence on which the IJ and the BIA focused went to the crucial issue of whether Restrepo could satisfy the eligibility requirements to receive cancellation of removal relief. As we have already explained, substantial evidence supports a finding that these discrepancies and gaps were significant enough to be indicative of a lack of credibility. Cf. Juárez-López v. Gonzales, 235 Fed. Appx. 361, 367 (7th Cir. 2007) ("Adverse credibility determinations should not be based upon easily explained discrepancies or perceived discrepancies.").

-15-

Finally, Restrepo's claim that the IJ did not properly consider his proffered explanations as to any discrepancies or omissions is similarly unavailing. While Restrepo underscores that his and María's testimony addressed, at least in part, the premises upon which the IJ based her adverse credibility determination -- e.g., by noting that the couple's third child was conceived while María was separated (even if not yet divorced) from Ríos -- it was certainly reasonable for the IJ and the BIA to find these explanations inadequate. Most importantly, we note that the IJ, commensurate with her misgivings about Restrepo's marital history, once continued proceedings to allow Restrepo to submit his divorce records to the immigration court along with a letter from his church outlining his family history. According to the IJ's decision, Restrepo failed to comply with the immigration court's request and did not attempt showing that the requested evidence was unavailable. Cf. Muñoz-Monsalve v. Mukasey, 551 F.3d 1, 8 (1st Cir. 2008) (in asylum case, noting "utter lack of corroboration, easily obtainable were the petitioner's tale true, supports [] adverse credibility determination" (footnote omitted)). In its decision, the BIA referenced Restrepo's failure to proffer the materials the IJ requested, correctly adding that under INA § 240(c)(4)(B), if the trier of fact requests additional corroborative evidence, such evidence "must be provided" unless it

cannot be reasonably obtained. <u>See</u> 8 U.S.C. § 1229a(c)(4)(B) (emphasis added).

### III.  <u>Conclusion</u>

For the foregoing reasons, Restrepo's petition for review is denied.

**<u>Denied</u>.**