NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0128n.06

No. 11-3177

FILED

Feb 02, 2012

LEONARD GREEN, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

JERMIA CHAIDY,

     Petitioner,

v.

ERIC H. HOLDER, JR., Attorney General
of the United States,

     Respondent.

_____ /

ON PETITION FOR REVIEW FROM
THE BOARD OF IMMIGRATION
APPEALS

BEFORE:    CLAY, SUTTON, and STRANCH, Circuit Judges.

     **CLAY, Circuit Judge.**  Petitioner Jermia Chaidy petitions for review of an order of the

Board of Immigration Appeals ("BIA" or "the Board") affirming a decision of the Immigration Judge

("IJ"), which denied Chaidy's application for adjustment of status on the ground that Chaidy failed

to prove his lawful admission to the United States. Because substantial evidence supports the

Board's conclusion that Chaidy is ineligible for adjustment of status, we **DENY** the petition.

**STATEMENT OF FACTS**

     After Chaidy was served with a Notice to Appear in April 2008, he gave the IJ the following

account of his entry into and stay in the United States. In 1966, Chaidy was born in Indonesia to

Chinese missionaries under the name of "Jermia Chiew." Roughly two years after his birth, his

parents changed his last name to "Chaidy." Around 1985, Chaidy and his parents moved to Singapore. There, Chaidy's parents obtained an Indonesian passport for him, purportedly under the name "Jermia Chiew."

In July 1986, Chaidy and his mother, Yetty Dorcas, visited the United States Embassy in Singapore. At the time of this visit, Chaidy was nineteen years old and was admittedly proficient in the English language. According to Chaidy, he and his mother obtained visitors visas allowing them entry into the United States. Chaidy later testified both that he did not know what kind of visa he obtained and that he obtained a student visa.

Later in July 1986, Chaidy and his mother flew directly from Singapore to Los Angeles. According to Chaidy, an immigration officer interviewed them in Los Angeles, tore off a portion of their visas, and then allowed them to pass into the United States. They then flew to Boston. There, they stayed with Chaidy's aunt in Newton, Massachusetts. Dorcas left the United States after one month, but Chaidy stayed with his aunt and attended Bunker Hill Community College. According to Chaidy, a friend of his aunt's paid for his education.

About two years later, Chaidy stopped attending Bunker Hill and left Boston for New York City, after feuding with his aunt.[1] Shortly after arriving in New York in 1989, he fell asleep on the subway and woke up to find that his passport and visa had been stolen from his bag. Chaidy did not report the theft, explaining in his testimony that he was "young and stupid" and did not understand

---

[1] Chaidy did not attempt to have his aunt testify on his behalf, explaining that he and his aunt had a poor relationship. He also did not attempt to have his purported education sponsor testify, stating that he and the sponsor lost touch years ago.

the documents' importance. Chaidy also testified that, around 1991 or 1992, he was arrested in New York for shoplifting several articles of clothing and charged with a misdemeanor.

Chaidy explained that he did not have a permanent address in New York until the late 1990s, when he moved in with his girlfriend, Teresa Farnell. In 2000, Chaidy applied for a new Indonesian passport through the Indonesian Embassy. The embassy told Chaidy to obtain a police report describing the theft of his original passport. Once Chaidy obtained a police report and other documents, the Indonesian Embassy issued him a new passport.

Chaidy and Farnell married in 2002 and moved to Michigan in 2004. Shortly after he was married, Chaidy made several efforts to obtain proof of his entry into the United States. In the spring of 2002, an attorney named Louise Cavanaugh told Farnell that Chaidy was a "B-2 overstay." Chaidy accepted the attorney's statement and then stated on every document submitted to DHS that he obtained a B-2 visitor visa during his 1986 visit to the United States Embassy in Singapore.

Also in the spring of 2002, another attorney advised Farnell that she should attempt to find Chaidy's Form I-94 "Arrival/Departure Record," which serves as proof of an alien's status and the dates of his permissible stay in the United States. *See* 8 C.F.R. § 103.7(b)(1). Chaidy filed a Form I-102 "Application for Replacement/Initial Nonimmigrant Arrival-Departure Document," seeking the I-94 record of Chaidy's arrival. *See id.* The Department of Homeland Security ("DHS") could not find Chaidy's I-94. Chaidy filed another Form I-102 through yet another attorney in 2004, yielding the same result. DHS was able to determine that Chaidy's mother had obtained a B-2 visa making her eligible to stay in the United States between July 13, 1986, and August 15, 1986.

3

Chaidy and his wife made other efforts to verify his entry. They contacted the United States Embassy in Singapore, but embassy personnel explained that the embassy did not retain visa application forms for longer than three years. They also contacted China Airlines in search of a record of Chaidy's 1986 flight with his mother, but the airline explained that it did not retain flight manifests dating to 1986.

After Chaidy concluded his testimony, the IJ heard from Chaidy's parents, whose testimony conflicted with Chaidy's in several respects. Chaidy's parents testified that the passport they obtained for their son in Singapore listed his legal name, "Jermia Chaidy," while Chaidy testified that his parents applied for the passport under the name "Jermia Chiew." Chaidy's parents testified that they financially supported his education and that Chaidy left school after they could no longer afford it. Dorcas also provided the IJ documentation of the B-2 visitor visa she obtained in 1986.

Chaidy produced several pieces of documentary evidence in support of the contention that he arrived in the United States lawfully, but the IJ largely discounted this evidence. Chaidy offered an I-20 "Certificate of Eligibility for Nonimmigrant (F-1) Student" form. *See* 8 C.F.R. § 214.2(f). The I-20 form is dated June 3, 1986, and Chaidy testified that Bunker Hill sent him the form before he left Singapore. But all of the carbon copy pages remained attached to the form, and Chaidy had not signed it. Chaidy also admitted that the I-20 in question was not the form he used to enter Bunker Hill, and that he did not have a copy of the form he actually used. Chaidy also produced a transcript from Bunker Hill in the name of "Jermia Chiew," which listed classes from fall 1986 and spring and summer 1987. Additionally, Chaidy submitted a typewritten letter from a pastor of the

Chinese Christian Church of New England in Boston dated September 1986, stating that "Jermia Chiew" joined the church in July 1986.

The IJ found Chaidy removable and denied his applications for relief from removal. The IJ denied Chaidy adjustment of status on the ground that Chaidy failed to prove his lawful entry into the United States, as required by 8 U.S.C. § 1255(a). The BIA affirmed, agreeing with the IJ that Chaidy failed to prove his lawful admission. Chaidy timely filed a petition for review, which we have jurisdiction to hear under 8 U.S.C. § 1252.

## DISCUSSION

Chaidy lodges two challenges to the BIA's denial of his application for adjustment of status, which "is a form of relief that allows a deportable alien who would be admissible to the United States if he were seeking to enter the country to adjust his status to that of an alien seeking entry." *Ahmed v. Mukasey*, 519 F.3d 579, 581 n.1 (6th Cir. 2008) (internal citations omitted). An alien found removable may apply for adjustment of status, which the Attorney General may grant "in his discretion and under such regulations as he may prescribe." 8 U.S.C. § 1255(a). As a prerequisite for obtaining adjustment, the alien must demonstrate that he was "inspected and admitted or paroled into the United States." *Id.*; *see Ramirez-Canales v. Mukasey*, 517 F.3d 904, 907–08 (6th Cir. 2008).

## I.     Burden of Proof Applicable to Chaidy's Application

Chaidy first argues that the Board applied the wrong burden of proof when deciding whether Chaidy was eligible for adjustment of status. The burden of proof governing Chaidy's application is a question of law, which we review *de novo*. *Patel v. Gonzales*, 432 F.3d 685, 692 (6th Cir. 2005). We defer to the BIA's interpretation of the INA and its regulations if the interpretation is not plainly

erroneous or inconsistent with Board precedent. *Ghazali v. Holder*, 585 F.3d 289, 293 (6th Cir. 2009) (quoting *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945)).

According to Chaidy, the IJ erred by requiring him to show his eligibility for adjustment by clear and convincing evidence rather than by a preponderance of the evidence. Chaidy's challenge invites us to wade into a technical thicket, and there is at least some ambiguity about the burden applicable to alien's proof of his lawful admission.

A cursory reading of the INA and accompanying regulations suggests that an alien must prove his lawful admission either "clearly and beyond doubt" or, more likely, "by clear and convincing evidence." *See* 8 C.F.R. § 1240.8(c). The statute that governs removal proceedings requires an alien to prove he "is lawfully present in the United States pursuant to a prior admission . . . by clear and convincing evidence." 8 U.S.C. § 1229a(c)(2). An implementing regulation similarly requires an alien to demonstrate the lawfulness of his prior admission by clear and convincing evidence, while also allowing him to prove "clearly and beyond a doubt" his entitlement to admissibility to the United States. 8 C.F.R. § 1240.8(c).

The governing statute also allows the alien to prove his eligibility for relief from removal, such as adjustment of status, by some unspecified burden. *See* 8 U.S.C. § 1229a(c)(4). The same implementing regulation assigns the "preponderance of the evidence" standard to the alien's showing of his eligibility for relief. 8 C.F.R. § 1240.8(d). These provisions suggest a two-stage framework whereby an alien may first prove his lawful admission or, if he fails to meet the exacting burden in the first stage, prove his eligibility for discretionary relief according to a more generous burden. Our cases recognize this framework. *See Matovski v. Gonzales*, 492 F.3d 722, 737–39 (6th Cir. 2007).

This scheme does not apply with complete ease to an adjustment of status application. Under the two-stage scheme, an alien who fails to prove the lawfulness of his admission by clear and convincing evidence could prove his eligibility for adjustment by a preponderance of evidence. But the INA conditions eligibility for adjustment on the alien's ability to prove that he "was inspected and admitted or paroled into the United States," 8 U.S.C. § 1255(a), which must be proven by clear and convincing evidence. *Id.* § 1229a(c)(2). Chaidy would have us read §§ 1229a(c)(2) and 1255(a) to provide separate requirements governed by separate burdens, in which an applicant can prove the lawfulness of his entry by preponderance of the evidence at the second stage if he is unable to do so by clear and convincing evidence at the first stage. This interpretation strikes us as likely incorrect—particularly since we have previously stated that an alien must prove his eligibility for adjustment "clearly and beyond doubt"—but the interpretation is not altogether implausible and certainly merits clarification. *See Matvoski*, 492 F.3d at 738 (quoting § 1240.8(b)).

We are unable to fully address Chaidy's proposed interpretation, however, because he failed to raise the argument before the BIA. *See* 8 U.S.C. § 1252(d)(1); *Bi Xia Qu v. Holder*, 618 F.3d 602, 610 (6th Cir. 2010). Chaidy argues that he had no reason to challenge this aspect of the IJ's decision, because the Board, and not the IJ, applied the clear and convincing evidence standard to his adjustment application. Chaidy contends that the IJ applied the preponderance of the evidence standard, giving him no ground to object to the Board on that issue.

Chaidy's characterization of the IJ's opinion is unpersuasive. Rather, it is unclear from the IJ's opinion how he allocated the burdens of proof. The decision refers to all three burdens we have discussed: the IJ stated that Chaidy had to prove his lawful admission "by clear and convincing

7

evidence," his entitlement to admission "clearly and beyond a doubt," and the inapplicability of a mandatory denial of relief "by a preponderance of the evidence." Hence, if Chaidy wanted to challenge the burden of proof the IJ applied to his application for adjustment, the IJ's opinion gave him a sound basis for doing so before the Board. And he was required to do so, in order to give the Board the chance to consider the argument and assemble a record to enable our review. *Bi Xia Qu*, 618 F.3d at 610. Since Chaidy did not raise the issue in front of the Board, he failed to exhaust his administrative remedies and forfeited the issue for our review.

**II. IJ's Denial of Relief Supported by Substantial Evidence**

Chaidy next challenges the IJ's conclusion that his testimony and evidence did not prove his lawful admission into the United States. We review the IJ's factual findings and credibility determinations for substantial evidence. *Id.* at 605. The Court must uphold the IJ's factual determination "as long as it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Zhao v. Holder*, 569 F.3d 238, 247 (6th Cir. 2009) (internal citations omitted). The Court may only reverse a factual determination if "any reasonable adjudicator would be compelled to conclude to the contrary." *Bi Xia Qu*, 618 F.3d at 606 (quoting 8 U.S.C. § 1252(b)(4)(B)).

Chaidy argues that the Board should have presumed his testimony credible, because the IJ did not expressly assess the credibility of his testimony. Under 8 U.S.C. § 1229a(c)(4)(C), an alien is entitled to a presumption of credibility "if no adverse credibility determination is explicitly made." In *Haider v. Holder*, 595 F.3d 276 (6th Cir. 2010), we adopted the procedure for reviewing the

decision of an IJ that "expresses concerns" about an alien's credibility but "fails to make an explicit adverse [credibility] determination." *Id.* at 282. As we explained:

> when an IJ or the BIA expresses suspicion about an applicant's lack of credibility but the BIA fails to make an explicit adverse determination and instead denies relief on some other basis, we will assume that the applicant was credible in order to review the actual grounds for the ruling. . . . If we conclude that the stated basis for denying relief was supported by substantial evidence, further review is foreclosed. If the evidence compels the opposite result, however, we will remand for a credibility determination.

*Id.* Chaidy contends that *Haider* requires us to presume his testimony credible and decide whether the remainder of the record supports the IJ's denial of relief.

We disagree. The IJ did more than "express[] suspicion" about Chaidy's credibility; rather, he clearly disbelieved it. *Id.* The IJ noted specifically that Chaidy failed to verify the existence of his visa and could not recall the type of visa he obtained; that Chaidy did not file a police report regarding his stolen passport, leading the IJ to doubt that the passport was actually stolen; that Chaidy did not attempt to obtain his aunt's corroboration regarding the financial support he claimed to receive for his education at Bunker Hill and regarding the alleged deterioration of their relationship; that Chaidy's testimony directly conflicted with his mother's testimony regarding the payment for Chaidy's education and their seating arrangements on the flight to Los Angeles; and that Chaidy provided no documentation of his residence in New York between 1987 and 1996, leading the IJ to believe Chaidy fabricated the story of his arrest in order to prove his residence in this country and to believe that Chaidy resided outside the United States during that period.

Moreover, the IJ did not make a single factual finding based on Chaidy's testimony alone. The IJ credited Chaidy's testimony regarding his whereabouts since he moved in with his future wife

only because it was corroborated by Chaidy's wife, who the IJ considered the hearing's lone credible witness. Furthermore, the IJ strongly implied that he believed Chaidy's testimony was dishonest, explaining that he could not prove Chaidy was lying but nonetheless thought Chaidy "might have intentionally proffered testimony that was not true." All told, it is clear from the opinion that the IJ disbelieved Chaidy's testimony and found him lacking in credibility and, unlike in *Haider*, denied his application on that basis. While we would always prefer an IJ to state his assessment of an applicant's credibility clearly for the record, the IJ's failure to use the magic words to describe his assessment does not trigger the *Haider* framework on these facts.

Given the IJ's rejection of Chaidy's testimony, we conclude that substantial evidence supported the IJ's denial of his application. Chaidy failed to produce documentary evidence of his lawful entry. Chaidy did not provide a visa, and his two attempts to obtain official verification of his entry turned up no verifying documents. Chaidy also failed to produce a completed I-20 form from Bunker Hill demonstrating his legal eligibility to attend the school. Instead, he produced an uncompleted I-20 with all of the carbon copies attached and dated June 1986, prior to Chaidy's claimed date of entry. Chaidy did produce a transcript from Bunker Hill, but the IJ correctly reasoned that the transcript was not probative of the lawfulness of Chaidy's entry. Chaidy also produced no documentation of his alleged arrest. He provided a fingerprint record, but, since it was dated June 2009 and bore a name different than the one he claimed to use in the early 1990s, that record is also not probative of the lawfulness of Chaidy's entry.

Dorcas' account of Chaidy's entry could not save Chaidy's application, because it conflicted with her son's account in crucial ways. Chaidy testified that his father, Chaidy Junus, assisted him

in obtaining a passport prior to leaving Singapore for the United States, but Dorcas testified that Chaidy obtained the passport on his own. Chaidy testified that the Indonesian passport he obtained in Singapore listed him according to the name "Jermia Chiew," but Dorcas and Junus testified that the passport listed Chaidy according to the name "Jermia Chaidy." Chaidy testified that his aunt's friend paid for his education at Bunker Hill, but Dorcas testified that she and her husband paid for Chaidy's education. Chaidy testified that he left Boston after a falling out with his aunt, while Dorcas testified that Chaidy left Boston after his parents could no longer afford to pay for his education. After Chaidy's attorney prepared a letter detailing Chaidy's and Dorcas' account of their trip from Singapore to Los Angeles, Chaidy said he saw his mother sign the declaration. However, Dorcas testified that she signed it in Indonesia and mailed it to her son. All told, Dorcas' testimony detracted from Chaidy's account of his entry into the United States.

Finally, Chaidy argues that the BIA improperly imposed a corroboration requirement that the IJ did not impose. We disagree. This argument improperly characterizes the opinions of the IJ and the Board. The IJ cited Chaidy's failure to corroborate the theft of his passport as one of many bases for disbelieving Chaidy's testimony and concluding that he did not prove the lawfulness of his entry. The IJ's desire for corroboration of Chaidy's testimony was consistent with the statutory framework governing removal proceedings and was reasonable under the circumstances. 8 U.S.C. § 1229a(b)(4)(B); *see Yan Chen v. Holder*, 423 F. App'x 557, 561–62 (6th Cir. 2011). Contrary to Chaidy's assertion, the IJ allowed Chaidy ample time to obtain evidence corroborating his testimony. Not only did the IJ's adjudication of his case stretch well over a year, Chaidy admitted that he never sought to have the theft documented and that he and his wife had searched for corroborating

evidence since 2002. The Board noted Chaidy's failure to corroborate his arrest merely as a basis for concluding that substantial evidence supported the IJ's decision. Thus, the Board did not require more corroboration than the IJ required.

## CONCLUSION

For the foregoing reasons, we **DENY** Chaidy's petition for review.