# United States Court of Appeals
## For the First Circuit

No. 15-2373

WEN ZHONG LI,

Petitioner,

v.

LORETTA E. LYNCH,
Attorney General of the United States,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Howard, Chief Judge,
Lynch and Barron, Circuit Judges.

Wei Jia and Law Office of Wei Jia on brief for petitioner.
Laura Halliday Hickein, Trial Attorney, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Benjamin C. Mizer, Principal Deputy Assistant Attorney General, and Russell J.E. Verby, Senior Litigation Counsel, on brief for respondent.

September 20, 2016

**LYNCH**, **Circuit Judge**.  Wen Zhong Li petitions for review of the Board of Immigration Appeals' ("BIA") affirmance of an immigration judge's ("IJ") order removing him to China and denying his application for adjustment of status or voluntary departure. Li challenged the Department of Homeland Security's ("DHS") charge that he was removable because he had procured admission into the United States by willfully misrepresenting his identity to immigration officials.  Following a procedural maze of two Notices to Appear, multiple IJ rulings, and a denial of an application to adjust status by the U.S. Citizenship and Immigration Services ("USCIS"), the BIA held that Li was removable because the misrepresentation of his identity was willful.  Li now argues that this ruling was error.  We deny his petition.

I.

Li, a native and citizen of China, was paroled into the United States on May 2, 2000 in Honolulu, Hawaii after presenting a fraudulent Japanese passport that featured his photograph but stated his name as Ikeda Katsuyuki.  According to Li, he procured that passport from "his friends and family [who] helped him get [the] passport and everything he needed to enter the United States."  Under what was then known as the Visa Waiver Pilot Program ("VWPP"),[1] which was available to Japanese, but not

_____

    [1]    Today, the Visa Waiver Program enables eligible citizens or nationals of thirty-eight designated countries to travel to the

Chinese, citizens and nationals, Li was paroled into the country for a period of time not to exceed July 31, 2000.  Li remained in the United States past that date.

On April 16, 2002, the former Immigration and Nationality Service ("INS")[2] apprehended Li during a raid on a home in Quincy, Massachusetts and served him with a Notice to Appear ("NTA").  The NTA charged him as removable for procuring or having sought to procure admission into the United States "by fraud or willfully misrepresenting a material fact" under 8 U.S.C. § 1182(a)(6)(C)(i), and for failing to possess a valid entry document at the time of application for admission under § 1182(a)(7)(A)(i)(I).  On June 25, 2002, Li filed written pleadings, in which he denied that he had been paroled into the United States on May 2, 2000; that he had misrepresented himself as a Japanese citizen and national; and that he had remained in the United States beyond July 31, 2000 without authorization.

On July 21, 2003, after holding four hearings on the matter, an IJ sustained the charge of removability, found that Li was an arriving alien who was statutorily ineligible for adjustment

---

United States for up to ninety days without first obtaining a visa.  See U.S. Department of State, Bureau of Consular Affairs, Visa Waiver Program, https://travel.state.gov/content/visas/en/visit/visa-waiver-program.html.  Japan remains a designated country, while China is not.  See id.

[2]    DHS inherited the INS's functions in March 2003.

of status or voluntary departure, and ordered him removed to China. At one of the four hearings, DHS Special Agent Randolph Reeves testified that, upon apprehension in 2002, Li initially presented himself to Reeves as Ikeda Katsuyuki and produced an Ohio driver's license bearing that name. The license had been issued on January 2, 2001. Li later admitted to Reeves that his real name was Wen Zhong Li, that he was a citizen of China, and that he had used a false Japanese passport to enter the United States. Reeves further explained that at the time of Li's entry, the VWPP had been temporarily suspended, and so citizens and nationals from designated countries were being temporarily paroled into the United States, rather than being formally admitted.

A flurry of procedural activity ensued. In October 2005, Li filed a motion to reopen his removal proceedings, citing Succar v. Ashcroft, 394 F.3d 8 (1st Cir. 2005). A second IJ granted the motion. At his reopened removal proceedings in August 2006, Li filed written pleadings that admitted all allegations in the 2002 NTA, including the fact that he had misrepresented himself as a Japanese citizen and national and that he was removable under both statutory provisions cited in that initial NTA. In February 2007, the second IJ granted Li's motion to terminate proceedings to allow him to seek employment-based adjustment of status with the USCIS. The USCIS denied his application to adjust status in September 2008 because Li had procured his entry into the United

- 4 -

States in violation of 8 U.S.C. § 1182(a)(6)(C)(i). In June 2009, DHS issued a second NTA charging Li as removable under the same two inadmissibility provisions as in the 2002 NTA, and Li filed written pleadings in response in December 2009. There, he conceded removability under § 1182(a)(7)(A)(i)(I) (for failing to possess a valid entry document at the time of application for admission), but denied that he was removable under § 1182(a)(6)(C)(i) (for procuring admission into the United States by fraud or willful misrepresentation of a material fact). Li also sought termination of proceedings, adjustment of status, or voluntary departure.

On September 29, 2011, the second IJ found that Li was removable as charged. First, as the charge in the 2002 NTA was identical to that in the 2009 NTA and as the original IJ had sustained that charge, the second IJ found that the original IJ's "decision remain[ed] the law of the case." The second IJ also found, in the alternative, that even under an independent review, Li had procured his parole by willfully misrepresenting his identity with the fraudulent Japanese passport. Undercutting Li's argument that he could not read or understand English in 2000 and thus could not have known that the passport was Japanese or contained a foreign name,[3] the IJ emphasized Li's possession of

_____

[3] Li does not explain why he did not recognize that the passport was not in Chinese, regardless of his command of English.

- 5 -

the Ohio driver's license -- which featured the same name as the fraudulent passport and had been issued only months after Li was paroled into the country. The IJ then found that the misrepresentation was material because Japan was a VWPP-designated country but China was not, and Li had thus obtained benefits "unique to the visa waiver program, namely the ability to enter the United States without first obtaining a visa stamp."

The IJ also concluded that Li was ineligible for relief in the form of adjustment of status because he was inadmissible under § 1182(a)(6)(C)(i). See 8 U.S.C. § 1255(a). Li was likewise ineligible for voluntary departure because he was an arriving alien. See 8 U.S.C. § 1229c(a)(4).

The BIA affirmed, agreeing with the second IJ's assessment of the record evidence.

Li now petitions for review of the BIA's decision.[4]

II.

We review the BIA's finding that an alien procured an immigration benefit through willful misrepresentation as a "question of fact" subject to deferential substantial evidence review. Akwasi Agyei v. Holder, 729 F.3d 6, 14 (1st Cir. 2013). This case turns on whether there was substantial evidence to

---

[4] The BIA also denied Li's motion to close the case pending DHS's determination of his eligibility for a favorable exercise of prosecutorial discretion. Li did not petition for review of this decision, so we do not reach it.

- 6 -

support the finding of willfulness. We hold that there was such evidence and accordingly deny Li's petition.

Substantial evidence supports the BIA's and IJ's finding that Li's misrepresentation of his name, citizenship, and nationality was willful. See Lutaaya v. Mukasey, 535 F.3d 63, 70 (1st Cir. 2008) (when BIA writes "separately while deferring to and affirming the decision of an IJ, we review both the BIA's decision and the relevant portions of the IJ's decision"). Here, in addition to relying on the law-of-the-case doctrine, see, e.g., Arizona v. California, 460 U.S. 605, 618 (1983), the IJ independently found on the facts that Li's misrepresentation had been willful.

We have held that "the element of willfulness [for the purpose of 8 U.S.C. § 1182(a)(6)(C)(i)] is satisfied by a finding that the misrepresentation was deliberate and voluntary." Toribio-Chavez v. Holder, 611 F.3d 57, 63 (1st Cir. 2010) (quoting Mwongera v. INS, 187 F.3d 323, 330 (3d Cir. 1999)). "An intent to deceive is not necessary; rather, knowledge of the falsity is sufficient." Id.

The record supports the finding that Li deliberately and voluntarily used the fraudulent Japanese passport to gain entry into the United States. For one, Li admitted in his written pleadings in 2006 that he had misrepresented his identity when he presented a fraudulent Japanese passport with the name Ikeda

- 7 -

Katsuyuki so that he could be paroled into the country. Furthermore, less than one year after his entry, Li obtained an Ohio driver's license with the same false name of Ikeda Katsuyuki. During the 2002 raid, Li identified himself to Reeves as Ikeda Katsuyuki, produced the driver's license with that name, and only later admitted that he was actually Wen Zhong Li. These facts constitute substantial evidence to support the finding that Li's misrepresentation was willful. Indeed, as the second IJ observed, the Ohio driver's license, issued on January 2, 2001, was crucial, for it showed that Li "had the presence of mind to apply for and obtain a government-issued document in a name that he claimed to not be able to read."

Finally, Li's argument that the IJ erroneously failed to make a credibility determination does not help him, for three reasons. First, it is not clear that the statutory provision that Li cites, 8 U.S.C. § 1229a(c)(4)(C), applies to the threshold issue of removability, as distinct from his ability to satisfy other requirements for relief. See Ahmed v. Lynch, 804 F.3d 237, 241 (2d Cir. 2015). Second, contrary to Li's protests that neither the first nor the second IJ made any credibility finding, the second IJ's 2011 decision may be read to reflect an adverse credibility finding. Indeed, the second IJ explicitly noted how certain evidence "[u]ndercut[] [Li's] assertion that his misrepresentation was not willful." See Chaidy v. Holder, 458 F.

- 8 -

App'x 506, 511 (6th Cir. 2012) (unpublished opinion) (holding that presumption of credibility did not apply where "[t]he IJ did more than 'express[] suspicion' about [the petitioner's] credibility; rather, he clearly disbelieved it" (second alteration in original)).  Third, even assuming that Li is entitled to a rebuttable presumption of credibility, such a presumption is overcome where, as here, the petitioner's testimony is contradicted by a subsequent admission.

The petition for review is <u>denied</u>.